## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MICHAEL TRAVIS BUCKLEY, )
                                        )
      **Plaintiff,** )
                                          )
v.                                   )   **CIVIL ACTION NO. : 2:07-cv-1119-WKW-CSC**
                                          )
**BARBOUR COUNTY, et al.,** )
                                          )
      **Defendants.** )

## MEMORANDUM BRIEF IN SUPPORT OF
## MOTION TO DISMISS BARBOUR COUNTY, ALABAMA

COMES NOW Barbour County, Alabama, a Defendant in the above-styled cause, and submits this Memorandum Brief in support of its contemporaneously filed Motion to Dismiss. In support thereof, this Defendant states as follows:

### INTRODUCTION

On or about November 10, 2006, Plaintiff Michael Travis Buckley ("Plaintiff"), while incarcerated by the State of Alabama, was loaned by the Alabama Department of Corrections to Barbour County to clear roadways. (Doc. 1, ¶¶ 3, 4.) While working in a ditch, a co-worker allegedly cut a tree which fell onto the Plaintiff, rendering him paraplegic. (Doc. 1, ¶ 5.)

The Plaintiff filed a Complaint on October 1, 2007, in the Mobile Circuit Court. (Exhibit A.) On November 2, 2007, Barbour County filed a Motion to Dismiss and a Motion to Transfer Venue. (Exhibits B, C.) On November 13, 2007, the Mobile Circuit Court granted Barbour County's Motion to Dismiss and denied Barbour County's Motion to Transfer Venue as moot. (Exhibits D, E.) The Plaintiff did not appeal either Order. On December 26, 2007, the Plaintiff filed the instant action in the District Court for the Middle District of Alabama. In this Complaint, he alleges claims under both

federal and state law that purportedly arise out of the same incident that formed the basis of the October 1, 2007, Complaint.

Construed in a light most favorable to the Plaintiff, this Complaint is a mere "shotgun pleading" that alleges a federal claim against Barbour County for deliberate indifference under the Eighth and Fourteenth Amendments,[1] and attempts to allege a state law claim for "willful negligence" under § 14-8-40 Ala. Code 1975.[2] (Doc. 1, ¶¶ 8, 10-11.) For the reasons set out below, the Complaint fails to state a claim against Defendant Barbour County and is due to be dismissed in its entirety.

## ARGUMENT

A motion to dismiss will be granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (affirming district court's grant of 12(b)(6) dismissal) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Plaintiff's Complaint contains little more than conclusory allegations that cannot survive a motion to dismiss. See Aquatherm Industries, Inc. v. Florida Power & Light Co., 145 F.3d 1258, 1261 (11th Cir. 1998) (affirming dismissal and approving district court's reasoning that "vague, conclusory allegations are insufficient to state a claim upon which relief can be granted"). "Pleadings must be something more than an ingenious academic exercise in the conceivable." Marsh v. Butler County, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc) (citation omitted).

In addition, ***unsupported conclusions of law or of mixed law and fact are not sufficient to withstand dismissal*** under Rule 12(b)(6). Marsh, 268 F.3d at 1036 n.16 ("In the light of the usual pleading requirements of Fed. Rule Civil Proc. 8(a), unsupported conclusions of law or of mixed

---

[1] As discussed below, the Plaintiff cannot assert a claim under the Fourteenth Amendment because he was, at all times relevant to the Complaint, a state prisoner.

[2] Assuming, without conceding, that the Plaintiff has asserted a valid claim against Barbour County for "willful negligence" in Count II of his Complaint, he has failed to invoke this Court's supplemental jurisdiction under 42 U.S.C. § 1367 over that claim, so it is not properly before this Court.

fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.  See Stanton v. United States, 434 F.2d 1273, 1276 (5th Cir. 1970).  See also Associated Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir. 1974).  We count the 'developed and implemented ... with deliberate indifference to the medical needs ....' language in this unsupported-conclusion category.  See generally Mass. School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998) (a review court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited')"); see also South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss").

In the instant case, the Plaintiff has alleged no facts in his Complaint relating to Barbour County or any duty it owed to the Plaintiff.  In fact, the Plaintiff has failed to allege in his Complaint any action or inaction taken by Barbour County that has any bearing whatsoever on his claims.  The Complaint consists solely of a string of legal conclusions, that "Barbour County violated Plaintiff's rights under the Eight [sic] and Fourteenth Amendments … through its deliberate indifference" and that "Barbour County was willfully negligent," mixed with few, sparse factual allegations.  (Doc. 1, ¶¶ 8, 10.)  These "unsupported conclusions of law or of mixed fact and law" in the Complaint are insufficient to carry the Plaintiff's burden under Rule 8(a), Fed. R. Civ. P., and cannot preclude a Rule 12(b)(6) dismissal.  Marsh, 268 F.3d at 1036 n.16.

I.     **BARBOUR COUNTY IS ENTITLED TO SOVEREIGN IMMUNITY.**

   A.     **Barbour County is entitled to sovereign immunity under § 14 of the Alabama Constitution.**

Although it is generally accepted that Alabama Counties are not entitled to sovereign immunity from damages actions, Alabama courts have long held that when a county is acting as an agent of the State of Alabama, it stands in the shoes of the State of Alabama and is entitled to the same

immunity afforded to any other agent of the State.  See, e.g., Ex parte Tuscaloosa County, 796 So. 2d 1100, 1103 (Ala. 2000) (holding that "when a county or municipality acts as an agent of the state, it is entitled to share in the state's absolute immunity") (citations omitted); Rutledge v. Baldwin County Commission, 495 So. 2d 49, 53 (Ala. 1986) (holding that a county was "merely an agent of the Department of Public Safety for the purpose of collecting and transmitting applications and fees for the issuance of original or renewal driver's licenses," because "[that] function is specified by statute and is carried out in accordance with procedures promulgated by the Department of Public Safety").

### 1.     Barbour County acted as an agent of the Department of Corrections.

Here, the Plaintiff concedes in his Complaint that "at the time of his injury [he] was incarcerated by the State of Alabama Department of Corrections" when he "was **by contract** loaned to Barbour County for work involving debris removal" from roadways.  (Doc. 1, ¶ 3, emphasis added.)  The Complaint provides that "***[a]s part of the sentence*** [he was serving with the Department of Corrections], the Plaintiff was required to report to work."  (Doc. 1, ¶ 4.)  It is clear that from the face of the Complaint, that by employing the Plaintiff in a work-release program, Barbour County was acting as an agent of the Alabama Department of Corrections.  Alabama law has long established that an agency relationship exists where one party acts, or appears to act, on behalf of another.  Ware v. Timmons, 954 So. 2d 545, 552-53 (Ala. 2006) ("The principal must in some manner indicate that the agent is to act for him, and the agent must

act or agree to act on the principal's behalf").[3]  In this case, the Plaintiff concedes that the only reason Barbour County had any control over him was because the Department of Corrections entered into a contractual relationship with Barbour County that gave the County the authority to control the Plaintiff's actions.   And, it is clear from the face of the Complaint that Barbour County exercised that control over the Plaintiff.   Accordingly, an agency relationship existed between Barbour County and the Department of Corrections.

The Alabama Legislature has passed statutes that govern the use of state inmates, as was the Plaintiff at the time of his accident, for work-release programs, such as the one in which the Plaintiff participated for Barbour County.  Section 14-5-30, Ala. Code 1975, requires

> the Department of Corrections to develop … a manual labor work program for all inmates….  The manual labor required of the inmate shall be as rigorous as the department feels is justified, but shall consist primarily of the **removal of litter from the highways of this state**, the cleaning of unauthorized dumps and public cemeteries, the growing and raising of food for use by inmates or for sale to reduce the costs of incarceration to the taxpayers, and **the cleaning and maintenance** of public parks, or **municipal, county, or state property**.

Ala. Code § 14-5-30 (emphasis added).   More than fifty years earlier, the Alabama Legislature enacted Ala. Code § 14-5-10 which authorized the Board of Corrections

> to hire or lease convicts to any department, agency, board, bureau or commission of the state on such terms, conditions and at such prices as may be mutually agreed upon. Any department, agency, board, bureau or commission of the state is hereby authorized to contract with the board for the lease or hire of convicts upon such terms, conditions, and at such price as may be mutually agreed upon.

Ala. Code 1975, § 14-5-10.  It is clear from the face of the Complaint that Barbour County was acting under the auspices of § 14-5-10, Ala. Code 1975, in contracting with the Department of Corrections to

---

[3] Although to establish a *prima facie* agency relationship, the principle must "retain the right to direct the manner in which the business shall be done, as well as the results to be accomplished," Ex parte Paulk, 722 So. 2d 171, 174 (Ala. 1998), an agency relationship also exists under Alabama law even if the agent acts under the "apparent authority" of the principle, even if the principle retains no such right to control.  See Wood v. Shell Oil Co., 495 So. 2d 1034, 1038 (Ala. 1986) (Recognizing that an agency relationship exists "[w]hen one has reasonably and in good faith been led to believe, from the appearance of authority which a principal permitted his agent to exercise, that a certain agency exists").  Assuming without conceding that the Department of Corrections did not maintain control over the work-release program in which Barbour County employed the Plaintiff, the Complaint clearly demonstrates that the Department of Corrections not only "permitted [Barbour County] to exercise" control over the Plaintiff, but "required" the Plaintiff to work for Barbour County "as part of the sentence."  (Doc. 1, ¶ 4.)

use the Plaintiff in a work-release program, for which the Department of Corrections was responsible under § 14-5-30, Ala. Code 1975.  Accordingly, the agency relationship between Barbour County and the Department of Corrections is necessitated by Alabama statutory law, in addition to Alabama case law.

> ## 2.    The Alabama Department of Corrections is entitled to sovereign immunity.

The legal basis for absolute sovereign immunity is straightforward and well settled.  The Alabama Constitution of 1901 prohibits suits against the State of Alabama.  See Ala. Const. of 1901, art. I, § 14 ("the State of Alabama shall never be made a defendant in any court of law or equity"); see also Ex parte Ala. Dep't of Mental Health and Mental Retardation, 837 So. 2d 808, 811 (Ala. 2002) ("The courts of this State lack subject-matter jurisdiction over actions brought contrary to § 14.") (citation omitted); Larkins v. Dep't of Mental Health and Mental Retardation, 806 So. 2d 358, 363 (Ala. 2001) ("an action contrary to the State's immunity is an action over which the courts of this State lack subject-matter jurisdiction").   Article I, § 14 expressly prohibits suits against the State of Alabama and its departments and agencies.  See Ex parte Ala. Dep't of Transportation, --- So. 2d ----, 2007 WL 2070347, *3 (Ala. July 20, 2007) quoting Haley v. Barbour County, 885 So. 2d 783, 788 (Ala. 2004) ("This Court has repeatedly held that § 14, Ala. Const. 1901, 'affords the State and its agencies an 'absolute' immunity from suit in any court'."); Ex parte Tuscaloosa County, 796 So. 2d 1100, 1103 (Ala. 2000) ("Under Ala. Const. of 1901, § 14, the State of Alabama has absolute immunity from lawsuits.").

The Alabama Department of Corrections is a department of the State.  Latham v. Dept. of Corrections, 927 So. 2d 815, 820 (Ala. 2005); Ex parte Daniels, 941 So. 2d 251, 255 (Ala. 2006) ("the Department of Corrections 'is a department of the State'") (citation omitted).  As such, the Department of Corrections, like the State, is cloaked with sovereign immunity unless one of the long

established exceptions to sovereign immunity applies. [4]  Carpenter v. Tillman, 948 So. 2d 536 (Ala. 2006) ("Section 14 provides absolute immunity to agencies of the State, including the DOC.") (citation omitted); Latham, 927 So. 2d at 820 citing Haley, 885 So. 2d at 788 ("DOC is a department of the State and therefore is entitled to sovereign immunity."); Rodgers v. Hopper, 768 So. 2d 963, 968 (Ala. 2000) (concluding that the DOC "is entitled to sovereign immunity").  It is clear from the face of the Complaint that no exception to the sovereign immunity to which the Department of Corrections is entitled would apply.

> ### 3.    As an agent for the Department of Corrections, Baldwin County is entitled to the same immunity to which the Department of Corrections is entitled.

Under Alabama law, Barbour County stood in the shoes of the Department of Corrections when it acted as an agent of the Department of Corrections in controlling the actions of the Plaintiff during his work-release.  Accordingly, Barbour County is entitled to the same immunity to which the Department of Corrections is entitled.  See  Rutledge v, 495 So. 2d at 53; Ex parte Tuscaloosa County, 796 So. 2d at 1103.  The Alabama Supreme Court has already addressed the dispositive issue in this case: whether a County may be sued by a State inmate for an injury that occurred during a County work-release program in which the Department of Corrections allowed the inmate to participate.

---

[4] The instances in which sovereign immunity does not protect a state agency or agent from liability include:

> '[a] state official is not immune from an action that (1) seeks to compel a state official to perform his or her legal duties, (2) seeks to enjoin a state official from enforcing unconstitutional laws, (3) seeks to compel a state official to perform ministerial acts, or (4) seeks a declaration under the Declaratory Judgments Act, § 6-6-220 et seq., Ala. Code 1975, construing a statute and applying it in a given situation'.
>     …
> '(5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law'.

Ex parte Ala. Dep't of Transportation, --- So. 2d ----, 2007 WL 2070347, *2 (Ala. 2007) (internal citations omitted).  Here, the Complaint seeks an unspecified amount of compensatory and punitive damages, in excess of $75,000, so his claims do not fit within any recognized exception to Alabama's sovereign immunity.  (Doc. 1, ¶¶ 8, 11.)

In Town of Loxley v. Coleman, 720 So. 2d 907 (Ala. 1998), the plaintiff, a state inmate, was loaned by the Department of Corrections to a municipality to participate in a work-release program. Id. at 908.  While being transported in a truck with other such inmates, the plaintiff fell from the back of the truck and injured himself.  Id.  The plaintiff sued the municipality, alleging that it had negligently or wantonly caused the injury he suffered in the fall.  Id.  The Supreme Court observed that if the Town acted as an agent of the Department of Corrections, it would be "entitled to the protection of the State's immunity from suit pursuant to § 14, Ala. Const. of 1901, unless one of the exceptions applie[d]."  Id. citing Alexsis, Inc. v. Terry, 675 So. 2d 1321 (Ala. Civ. App. 1996) (holding that the company administering a self-insurance program for the Department of Transportation was an agent for the Department and was, therefore, immune from suit) and Bowden v. Southern Risk Servs., Inc., 574 So. 2d 813 (Ala. Civ. App. 1990), cert. quashed, 574 So. 2d 815 (Ala. 1991).  The Court held that "[h]ad the Department of Corrections been transporting Coleman, there would be no question that the doctrine of sovereign immunity would apply," and, accordingly, the municipality was "acting as [an] agent[] of the State, by reason of [its] service in transporting [the plaintiff] and other inmates as a part of the work-release program."  Town of Loxley, 720 So. 2d at 908.

Here, the Plaintiff concedes in his Complaint that Barbour County was employing him in a work-release program on behalf of the Department of Corrections.  As in Coleman, had the Department of Corrections been employing the Plaintiff in a work-release program, "there would be no question that the doctrine of sovereign immunity would apply."  Id.  Because Barbour County acted as an agent of the Department of Corrections in employing the Plaintiff in a work-release program, Alabama law affords Barbour County the same immunity to which the Department of Corrections is entitled.  Accordingly, Barbour County is entitled to absolute immunity from the Plaintiff's claim for damages.

8

**B.    Barbour County is entitled to sovereign immunity under the Eleventh Amendment.**

Although it is generally accepted that only a state and its agencies are entitled to absolute immunity from suit under the Eleventh Amendment, Papasan v. Allain, 478 U.S. 265 (1986), it is also well established that an agent of a state or its agencies is immune from suit under the Eleventh Amendment.   Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("holding that an official-capacity suit is an alternative method of "pleading an action against an entity of which the officer is an *agent'*) (emphasis added); Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (*en banc*) ("It is also well-settled that Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued and *when an 'arm of the State' is sued*. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 [] (1977).   To receive Eleventh Amendment immunity, a defendant need not be labeled a 'state officer' or 'state official,' but instead need only be acting as an 'arm of the State,' *which includes agents and instrumentalities of the State*.   See Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429-30 [] (1997) (emphasis added)).   See also, Zabriskie v. Court Admin., 172 F. App'x 906, 907-08, (11th Cir. 2006) ("Eleventh Amendment immunity also bars suits brought in federal court against defendants acting as an 'arm of the State,' which includes agents and instrumentalities of the State even though these entities are not labeled a 'state officer' or 'state official'") (quoting Manders, 388 F.3d at 1308) (unpublished decision).

In Manders, the Eleventh Circuit set forth the following test for determining whether an agent of a State may avail itself of the State's Eleventh Amendment immunity:

> Whether a defendant is an "arm of the State" must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise.  See Shands Teaching Hosp. & Clinics v. Beech St. Corp., 208 F.3d 1308, 1311 (11th Cir. 2000) ("The pertinent inquiry is not into the nature of [an entity's] status in the abstract, but its *function or role in a particular context*.

Manders, 338 F.3d at 1308 (emphasis added).  Here, it is clear that Barbour County was acting on behalf of the Department of Corrections in employing the Plaintiff in a work-release program at the time of the incident made basis of the Complaint.  Indeed, the Plaintiff was "required to report to work" with Barbour County "[a]s part of [his] sentence" with the Department of Corrections.  (Doc. 1, ¶ 4.)  Additionally, as the Court observed in Manders, "the resolution of the Eleventh Amendment issue … depends, in part, on state law," and, as discussed above, Alabama law treats Barbour County as an agent of the State for purposes of immunity in the circumstances presented in this case.  Id. at 1309.  Because Barbour County acted as an "agent" of the Department of Corrections in employing the Plaintiff in a work-release program, it was, in turn, acting as an "arm of the State" of Alabama and is entitled to the same Eleventh Amendment immunity to which the Department of Corrections would be entitled in this case.

Both Alabama law and Eleventh Circuit case law applying Eleventh Amendment immunity conclusively hold that an entity that acts on behalf of the State, as its agent or instrumentality, is entitled to sovereign immunity under both the Alabama and United States Constitutions.  Because Barbour County acted as an agent or instrumentality for the Department of Corrections, and ultimately the State of Alabama, it is entitled to the same immunity to which the Department of Corrections is entitled, under both the Alabama and United States Constitutions.  Accordingly, all claims, federal and state, are due to be dismissed.

## II.    THE PLAINTIFF'S FEDERAL CLAIM IS DUE TO BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Even assuming *arguendo* that Barbour County was not acting as an agent or instrumentality for the Department of Corrections in employing the Plaintiff in a work-release program, the

Complaint still fails to state a valid federal claim against Barbour County under § 1983.[5]  As the Eleventh Circuit has long recognized, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citations omitted). The Plaintiff has failed to include allegations in his Complaint that would, if true, satisfy any of the requisite elements for municipal liability.

> **A.    The Plaintiff has failed to allege that his constitutional rights were violated.**
>
> **1.    The Plaintiff's Fourteenth Amendment claim is due to be dismissed because he was a convicted prisoner at all times relevant to the Complaint.**

To the extent that Plaintiff alleges violation of his Fourteenth Amendment rights, the Plaintiff was a State inmate at the time of his allegations, and therefore, his claim falls under the Eighth Amendment, not the Fourteenth.  Lancaster v. Monroe County, 116 F.3d 1419, 1425 n. 6 (11th Cir. 1997) ("A government official's treatment of a pre-trial detainee is governed by the Due Process Clause of the Fourteenth Amendment, see Bell v. Wolfish, 441 U.S. 520, 535 n. 16 [] (1979), while the Cruel and Unusual Punishment Clause of the Eighth Amendment governs an official's treatment of a convicted prisoner.  See Estelle v. Gamble, 429 U.S. 97, 104 [] (1976)"); Andujar v. Rodriguez, 486 F.3d 1199, 1203 n.3 (11th Cir. 2007) ("Claims of deliberate indifference to the serious medical needs of pretrial detainees are governed by the Fourteenth Amendment's Due Process Clause rather than by the Eighth Amendment's Cruel and Unusual Punishment Clause, which governs similar claims by convicted prisoners").  Accordingly, the Plaintiff has failed to state a claim against

---

[5] Barbour County in no way concedes that it was not acting as an agent for the Department of Corrections, but contends, as the allegations of the Plaintiff's Complaint reveal, that it was acting on behalf of the Department of Corrections in employing the Plaintiff in a work-release program.  Neither does Barbour County concede that any of the Plaintiff's claims may proceed against him.  As discussed above, Barbour County is entitled to sovereign immunity under both state law, as an agent of the Department of Corrections, and under the Eleventh Amendment, as an "arm of the state."

Barbour County under the Fourteenth Amendment for deliberate indifference, and any Fourteenth Amendment claim is due to be dismissed.

### 2. The Plaintiff's Complaint fails to state any claim against Barbour County for deliberate indifference.

Before liability under 42 U.S.C. § 1983 may attach, the Plaintiff must show that Barbour County was deliberately indifferent.  In order to be deliberately indifferent, an official must both know of and disregard a serious risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The Farmer deliberate indifference standard contains both a subjective component (knowledge of the risk or willful blindness on the part of the official) and an objective component (whether there was a serious risk of harm).  Id. at 838-39.  As the Eleventh Circuit has held, "there could be no liability [for deliberate indifference] 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996) (quoting Farmer, 511 U.S. at 837).

The Complaint alleges only in the most conclusory fashion that "Barbour County placed Plaintiff in a dangerous work environment with knowledge that Plaintiff had risk of serious harm," and that "Barbour County violated Plaintiff's rights under the Eight [sic.] and Fourteenth Amendments … through its deliberate indifference to the substantial risk of serious harm to Plaintiff."  (Doc. 1 ¶¶ 6, 8.)  The Complaint fails to allege any facts that would support these vague conclusions of law, specifically, that would support a finding that Barbour County knew of and disregarded a serious risk of harm to the Plaintiff.  Accordingly, even under the minimum requirements of notice pleading of Rule 8(a), Fed. R. Civ. P., the Plaintiff has failed to plead facts sufficient to support a claim for deliberate indifference against Barbour County.  Marsh, 268 F.3d at 1036 n.16.

The Eighth Amendment's prohibition against cruel and unusual punishment is at the heart of the deliberate indifference inquiry. As the Supreme Court has recognized, "the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (citations omitted). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" Rhodes v. Chapman, 452 U.S. 337, 346 (1981). Here, the Plaintiff has failed to allege facts that, if true, would support a finding of an "unnecessary and wanton infliction of pain" by Barbour County. In fact, the Plaintiff has failed to allege any conduct on behalf of Barbour County that could be even remotely construed as "wanton."[6] At most, the Plaintiff has alleged a negligence claim against Barbour County, which he has attempted to disguise as a deliberate indifference claim in order to confer jurisdiction upon this Court.

However, a claim for negligence can never rise to the "the unnecessary and wanton infliction of pain" necessary to support a claim for deliberate indifference under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind *more blameworthy than negligence*") (emphasis added); Wilson v. Seiter, 501 U.S. 294, 305 (1991) (observing that the "obduracy and wantonness [necessary to support a deliberate indifference claim] requires behavior marked by persistent malicious cruelty .... Negligence, clearly, is inadequate to support an eighth amendment claim"). In fact, the Eleventh Circuit has held that even "gross negligence" will not support a deliberate indifference claim. See Saltzman v. Board of Comm'rs of North Broward Hosp. Dist., 239 F. App'x 484, 487-88 (11th Cir. 2007) (Negligence, even if gross, cannot constitute deliberate indifference") (citing Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005)) (unpublished decision); Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996) ("In any event, the Supreme Court's recent decision in Farmer v.

---

[6] Significantly, the conduct described by the Complaint as "tantamount to cruel and unusual punishment" is the same conduct that the Plaintiff describes as "willful negligence." (Doc. 1, ¶¶ 8, 11.)

Brennan, … which was released after this case left the district court, makes it clear that 'gross negligence' is not part of the standard for judging custody mistreatment claims under the Due Process Clause").

In holding that evidence of "gross negligence" is insufficient to support a claim for deliberate indifference, the Eleventh Circuit, in Cottrell, analyzed the Supreme Court's decision in Farmer.  Discussing the objective and subjective components to a deliberate indifference claim set forth in Farmer, the Court recognized that, "[t]o satisfy the objective component, the plaintiff must show a deprivation that is, 'objectively, sufficiently serious,' which means that the defendants' actions resulted 'in the denial of the minimal civilized measure of life's necessities.'" Cottrell, 85 F.3d at 1491 (quoting Farmer, 511 U.S. at 834)).    Regarding the objective component of the deliberate indifference inquiry, the Court observed:

> Even when that objective component is established, an in[-]custody mistreatment claim still fails unless the plaintiff establishes that the defendant had a "sufficiently culpable state of mind." … That requisite "state of mind is one of deliberate indifference to inmate health or safety." … It is a state of mind "lying somewhere between the poles of negligence at one end and purpose or knowledge at the other." … It is "the equivalent of recklessly disregarding" a substantial risk of serious harm to the inmate.

Id. (quoting Farmer, 511 U.S. at 834, 836).

The conduct alleged in the Complaint certainly does not amount to the reckless or wanton disregard of risk to the Plaintiff.  As discussed above, the only conduct complained of by the Plaintiff is described both as "tantamount to cruel and unusual punishment" and "willfully negligent."  (Doc. 1, ¶¶ 8, 10.)  However, even assuming *arguendo* that Barbour County was willfully negligent,[7] such conduct amounts to nothing more than "gross negligence," which cannot support a claim for deliberate indifference.  Black's Law Dictionary, defines "willful negligence" as synonymous with "gross negligence."  Black's Law Dictionary 1057, 1504 (7th

---

[7] Barbour County in no way concedes that it was "willfully negligent."

Ed. 1999). As one Florida District Court observed in attempting to define "willful negligence," "there is often no clear distinction at all between ['willful negligence'] and 'gross' negligence, and the two have tended to merge and take on the same meaning, of an aggravated form of negligence, differing in quality rather than in degree from ordinary lack of care." Royal Ins. Co. of America v. M/Y ANASTASIA, [Ms. 95-cv-60498, Jan. 30, 1997] [1997 WL 608722] *4 (N.D. Fla. 1997). Significantly, neither the Eleventh Circuit nor the Supreme Court has held that conduct alleged to be "willfully negligent" states a claim for deliberate indifference.[8] To the contrary, these Courts have consistently held that conduct that amounts to gross negligence, as does "willfully negligent" conduct, cannot state a claim for deliberate indifference under the Eighth Amendment. Farmer, 511 U.S. at 837; Bozeman, 422 F.3d at 1272; Cottrell, 85 F.3d at 1490-91. Because the Complaint fails to allege conduct on behalf of Barbour County that amounts to more than gross negligence, the Plaintiff has failed to state a claim against Barbour County for deliberate indifference.

**B.    The Plaintiff has failed to allege in the Complaint any basis for Barbour County's liability.**

**1.    The Plaintiff has failed to allege any policy or custom.**

The Plaintiff has failed to allege any practice or policy established by the Barbour County which could cause it to be liable for the Plaintiff's injury.

> [I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decision-maker may fairly subject a

---

[8]  The Fifth Circuit has refused to recognize a deliberate indifference claim for conduct alleged to be "willfully negligent." See Diaz ex rel. Diaz v. Mayor of Corpus Christi, 121 F. App'x 36, 39, (5th Cir. 2005) (holding that allegations that "the defendants had been willfully negligent and deliberately indifferent and had violated his son's constitutional right to be free from 'cruel and unusual punishment'" did not state a claim, because "[m]ere negligence, of course, does not give rise to a cognizable constitutional claim under 42 U.S.C. § 1983") (quoting Daniels v. Williams, 474 U.S. 327, 332-36 (1986)).

15

municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403-04 (U.S. 1997) (citations omitted); see also Colle v. Brazos County, 981 F.2d 237, 245 (5th Cir. 1993) ("A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity").

As discussed above, the Complaint contains **no allegations** specific to Barbour County. The Complaint contains no allegation showing that Barbour County promulgated any policy of which the Plaintiff now complains. In fact, the Plaintiff has failed to even identify a custom or policy that can be attributed to Barbour County regarding the facts made basis of his Complaint. Because there is no allegation showing that the Barbour County Commission enacted a policy or custom that caused the Plaintiff's injury, the Plaintiff's federal claim is due to be dismissed.

### 2.    The Plaintiff has failed to allege that the County was the "moving force" behind the Plaintiff's injury.

In order to hold a county or municipality liable for constitutional deprivations under § 1983, the Plaintiff must show that the county or municipality was the "moving force" behind the violation. See McElligott v. Foley, 182 F.3d 1248, 1259 (11th Cir. 1999) (affirming summary judgment in favor of county on the basis that the plaintiff did not show "that a county policy or custom was the 'moving force' that caused the alleged constitutional violations."). In order to demonstrate a policy, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to a municipality. The plaintiff must demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the alleged constitutional deprivation. Brown, 520 U.S. at 404; see also Polk County v. Dodson, 454 U.S. 312, 326 (1981). Only "when execution of a government's policy or custom" is responsible for "inflict[ing] the injury," and thus "the moving force of the constitutional violation" is the governmental entity liable.

16

Monell, 436 U.S. at 694; see also Farred v. Hicks, 915 F.2d 1530, 1532-33 (11th Cir. 1990); Anderson v. City of Atlanta, 778 F.2d 678, 685 (11th Cir. 1985). A plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the alleged injury. Brown, 520 U.S. at 404.

The Plaintiff has failed to provide any allegations that establish a direct causal link between Barbour County's conduct and his injury. The Complaint describes in detail the cause of the Plaintiff's injury: the Plaintiff "was caused to suffer a broken back … when a co-employee/inmate using a chain saw cut down a tree which landed on the Plaintiff." (Doc. 1, ¶ 5.) Nothing in this allegation, or anywhere else in the Complaint, shows that Barbour County was the "moving force" behind the Plaintiff's injury. Rather, the Complaint alleges that the unnamed co-employee caused the accident. Because the Plaintiff has failed to provide allegations in his Complaint to establish a causal connection between Barbour County and the Plaintiff's injury, he has failed to allege a claim for deliberate indifference against Barbour County. Accordingly, the claim is due to be dismissed.

### 3. Barbour County cannot be held liable under a theory of *respondeat superior.*

Governmental entities, such as Barbour County, cannot be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior*. See Monell v. New York City Dept. Of Soc. Serv., 436 U.S. 658, 694 (1978). Instead, "[a] local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.' Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80 [] (1986) (citing Monell [], 436 U.S. 658, [] (1978))." Turquitt v. Jefferson County, 137 F.3d 1285, 1287 (11th Cir. 1998). See also Canton v. Harris, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality **itself** causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983") (emphasis in original).

17

Accordingly, an entity can be held monetarily liable only through "'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers,'" or "'for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making body.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988) (quoting Monell, 436 U.S. at 690-91).

Here, as discussed above, the Plaintiff has failed to allege that Barbour County "*itself* caused the violation at issue." Canton, 489 U.S. at 385. Instead, the Complaint clearly establishes that the Plaintiff's co-employee caused the Plaintiff's injury by "using a chainsaw [to] cut down a tree which landed on the Plaintiff." (Doc. 1, ¶ 5.) As discussed above, nothing in the Complaint indicates that any policy or custom was the "moving force" behind the Plaintiff's injury. Accordingly, the only basis for holding Barbour County liable for the Plaintiff's injury is a theory of *respondeat superior* for the actions of the Plaintiff's co-employee. Where the Complaint alleges no basis for Barbour County's liability, except for a theory of *respondeat superior*, the Plaintiff has failed to state a claim under § 1983. See Gangl v. Campbell, [Ms. 2:07-cv-350-MHT, July 9, 2007] ___ F.3d ___ [2007 WL 2023494] *2 (M.D. Ala. 2007) ("In this case, Plaintiff does not allege much less indicate that Barbour County violated his civil rights as a result of any policy, practice or custom. Thus, Barbour County, Alabama is not liable under § 1983 for the actions about which Plaintiff complains and the claims against this defendant are, therefore, due to be dismissed pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i-ii)"). Accordingly, the Plaintiff's federal claim must be dismissed.

## III.    THE PLAINTIFF'S STATE LAW CLAIM IS DUE TO BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

To the extent that the Complaint alleges a claim Ala. Code § 14-8-40, the Plaintiff has failed to state a claim for willful negligence. As with the federal claim, the state-law claim fails to satisfy the minimum pleading requirements of Rule 8, Ala. Civ. P. The Complaint is comprised of legal

conclusions, with no supporting allegations of fact; for this reason, it fails to state a claim and is due to be dismissed. See Buchanon v. City Bd. of Educ., 262 So. 2d 296, 297 (Ala. 1972) (describing plaintiff's pleading, which alleged in conclusory fashion "acts of misfeasance and malfeasance on the part of the defendants," as "faulty in a variety of ways in attempting to state a cause of action"); Bell v. National Life & Acc. Ins. Co., 123 So. 2d 598, 600 (Ala. Ct. App. 1960) ("It is only 'mere conclusions' or 'bald conclusions,' without supporting facts which are objectionable in pleading'.") (citations omitted); Terrell v. Alabama Water Service Co., 15 So. 2d 727, 731 (Ala. 1943) (reiterating that when a plaintiff does not allege facts which show that particular conduct was wrongful, the plaintiff has stated only a legal conclusion, which is insufficient) (citation omitted).

The only allegation specific to Barbour County is the Plaintiff's claim that he was "by contract loaned to Barbour County for work involving debris removal" and that he was in Barbour County's "custody and/or control." (Doc. 1, ¶¶ 3, 4, 5.) The remainder of the Plaintiff's Complaint consists of nothing more than bare accusations of willful negligence without supporting factual allegations. These bare allegations fail to meet the minimum requirements of notice pleading under the Alabama Rules and cannot be relied on to state a claim for relief. See Buchanon, 262 So. 2d at 297; Bell, 123 So. 2d at 600; Terrell, 15 So. 2d at 731.

### A. The Plaintiff has failed to state a valid claim under Alabama law against Barbour County for "willful negligence."

Before liability can be imposed under a negligence theory, four critical elements must be proven: duty, breach, causation and injury. See Zanaty Realty, Inc. v. Williams, 935 So. 2d 1163, 1167 (Ala. 2005).

> With regard to the negligence and/or wantonness claim, we recognize that before liability for negligence can be imposed upon a governmental entity, there must first be a breach of a legal duty owed by that entity. Shearer v. Town of Gulf Shores, 454 So. 2d 978 (Ala. 1984). In determining whether a claim is valid, the initial focus is upon the nature of the duty. Rich v. City of Mobile, 410 So. 2d 385 (Ala. 1985). There must be either an underlying common law duty or a statutory duty of care with respect to the alleged tortious conduct.

Hilliard v. City of Huntsville, 585 So. 2d 889, 890 (Ala. 1991). "The determination as to the existence of a duty is for the court, and not for the jury." Collins Co., Inc. v. City of Decatur, 533 So. 2d 1127, 1134 (Ala. 1988) (citation omitted).

Unlike some states, Alabama has not recognized a duty on the part of the Department of Corrections, much less an individual or entity other than the Department of Corrections, to provide inmates a safe work environment or reasonably safe tools or machinery for specified work. More importantly, the Plaintiff ***does not allege*** that the Department of Corrections or Barbour County owed him any duty whatsoever. See, generally, Doc. 1; Warden v. Thigpen, 563 So. 2d 1021, 1022 (Ala. 1990) (concluding that *pro se* plaintiff failed to "state a cause of action upon which relief can be granted, even under our liberal pleading standards," because he neglected to allege a fact critical to his claim).

Even in jurisdictions where the Department of Corrections has a duty to provide inmates with a reasonably safe place to work and with equipment that is reasonably safe for performing required tasks, it is well established that "the Department is not the insurer of the safety of inmates in prisons. Its duty is to exercise reasonable care to protect an inmate against unreasonable risk of ***foreseeable*** harm. It is not required to anticipate and warn against every possible danger to which an inmate may be exposed." Perro v. State, 517 So. 2d 258, 261 (La. Ct. App. 1987) (citations omitted). Indeed, the Perro court affirmed the trial court's finding that the inmate-plaintiff was contributorily negligent in using a saw that did not have a guard on it. Id. at 261; see Carter v. State, 598 N.Y.S.2d 853, 853 (N.Y. App. Div. 1993) ("when an inmate fails to use ordinary care and pursues a dangerous course of conduct, he must take some responsibility for his own negligence"); Evans v. Travelers Ins. Co., 351 So. 2d 783 (La. Ct. App. 1977) (holding that inmate's contributory negligence barred his recovery as it was unreasonable for him to place himself in a precarious position on the fender of a tractor driven by another inmate); Smith v. Raleigh Granite Co., 162 S.E. 731, 733 (N.C. 1932) ("where the prisoner

20

of his own volition chooses an unusually dangerous method of executing the contractor's commands, he may be barred by contributory negligence") (citation omitted).

Barbour County had no duty to provide the Plaintiff, or members of the crew with whom the Plaintiff was working, training or instruction concerning the work they would be doing, especially under the facts of the instant incident.[9]  See, e.g., Roberson v. Allied Foundry and Machinery Co., 447 So. 2d 720, 722 (Ala. 1984) (refusing to support a claim by a third party against the employer of a state inmate for failure to supervise because, "[e]xcept with regard to a few restrictions imposed by the Board on employers and work release employees, those employees stand in the same relationship with their employers as non-inmate employees;" accordingly, there is no "special relationship in this case on the bare fact that work release employees are state inmates").  No other Alabama case or statute indicates that Barbour County owed a duty to supervise, train, or instruct the Plaintiff, or the crew with whom he worked.

In fact, other Courts have held that no duty exists to warn, or otherwise train, supervise, or instruct, another so as to avoid, an obvious danger, such as a falling tree.  See, e.g., A.A. Elec. Co. v. Ray, 149 S.W.2d 38, 39 (Ark. 1941) (observing that even if the decedent "was inexperienced in the matter of felling trees, what warning could the master have given him that he did not already know?").  Similarly, what warning or training could Barbour County or any of its officers or employees have issued to the Plaintiff to avert this incident?  As the Plaintiff describes it, his injury was so unforeseeable that no training, warning or safety equipment could have prevented it.  See Sellens v. Christman, 418 S.W.2d 6 (Mo. 1967) (holding that property owner had no duty to warn neighbor of open and obvious danger presented by cut tree lodged in the top of another tree where neighbor helped rock and cut trees in attempt to dislodge tree that had not completely fallen).  The Plaintiff appears to have experienced an unfortunate injury precipitated by his own contributory negligence for which

---

[9] It is significant that none of the specific allegations found in paragraphs 4 through 6 of the Plaintiff's Complaint are directed at Defendant Barbour County.  (Doc. 1, ¶¶ 4-6.)

Barbour County cannot be held responsible.  See Mann v. Smith, 561 So. 2d 1112, 1115 n.1 (Ala. 1990) (Maddox, J., concurring specially) ("'It is axiomatic that the mere happening of an accident raises no presumption of negligence'.") (citation omitted); Muhammad v. State, 790 N.Y.S.2d 570, 571 (N.Y. App. Div. 2005) (State Department of Corrections "'is not an insurer of inmate safety, and negligence cannot be inferred solely from the happening of an incident'") (citations omitted).  Because the Defendant did not have a duty with respect to the Plaintiff, and because the Plaintiff did not allege that the Defendant owed any duty to him, any negligence claim against the Defendant is due to be dismissed.

Assuming, *arguendo*, that the Defendant owed the Plaintiff a duty of some sort, the Defendant did not breach any such duty; indeed, the Plaintiff does not even allege that the Defendant breached a duty to him.  Again, assuming, *arguendo*, that the Defendant breached a duty to the Plaintiff, such a hypothetical breach by the Defendant was not the proximate cause of the Plaintiff's injury.  As before, there is no allegation by the Plaintiff that a breach of duty on the part of the Defendant was *a* proximate cause – much less *the* proximate cause – of Plaintiff's injury.  For these reasons, the Plaintiff failed to state a claim of negligence against this Defendant.  Accordingly, the Plaintiff's state-law negligence claim against Barbour County is due to be dismissed for failure to state a claim upon which relief may be granted.

### B. Section 14-8-40, Ala. Code 1975, provides no private cause of action against a municipality.

The Plaintiff specifically brings his state-law claim for "willful negligence" under "Ala. Code § 14-8-40." (Doc. 1, ¶¶ 9-11.)  Section 14-8-40, however, does not provide a State inmate a cause of action against a municipality; rather, it limits an inmate's ability to bring an action against a "county or community corrections agency" for any claim arising out of the inmate's participation in a work-release program.  Section 14-8-40 provides:

No inmate granted privileges under the provisions of this article shall be deemed to be an agent, employee, or involuntary servant of the department, state, or county while involved in the free community, while under the direction, control, and supervision of the inmate's employer, or while going to and from employment or other specified areas.

Any inmate participating in a work release program authorized by this chapter or otherwise working outside the jail or a correctional facility shall have no cause of action against the county or a community correction agency, or an employee thereof, related to such activities, unless the county or community corrections agency, or employee thereof, is willfully negligent in carrying out their responsibilities.

Ala. Code 1975 § 14-8-40.  Nothing in the plain language of this statute or the provision cited by the Plaintiff provides a state inmate a private cause of action against a municipality that employees the inmate in a work-release program under § 14-5-10, Ala. Code 1975, for the Department of Corrections.  Rather, it is clear that the only reason the Plaintiff has invoked § 14-8-40 is to attempt to avoid the statutory bar that precludes a claim against a municipality that arises out of a work-release program.  To the extent that the Plaintiff alleges "willful negligence" on the part of Barbour County, he does so only in an attempt to invoke the "magic language" of § 14-8-40 that will except him from the preclusive bar of that statute.  Accordingly, the Plaintiff fails to allege any conduct on the part of Barbour County that, if true, could conceivably constitute "willful negligence."

Because § 14-8-40 does not provide the Plaintiff a cause of action against Barbour County for any claim arising out of the work-release program, and the Complaint otherwise fails to allege any conduct on the part of Barbour County that could constitute "willful negligence," the Plaintiff has failed to state a claim against Barbour County under state law.  Accordingly, that claim is due to be dismissed.

## IV.    BARBOUR COUNTY IS IMMUNE FROM PUNITIVE DAMAGES.

Barbour County is immune from punitive damages under § 1983 and Alabama law. Accordingly, the Plaintiff's request for punitive damages is due to be stricken.

**A.    Barbour County is immune from punitive damages under 42 U.S.C. § 1983.**

Local governments, such as counties, are immune from punitive damages under § 1983. See 42 U.S.C. § 1981a(b)(1) (stating that punitive damages are not permitted against a "government, government agency or political subdivision"); Gaines v. Choctaw County Comm'n, 242 F. Supp. 2d 1153, 1166 (S.D. Ala. 2003) (holding that punitive damages may not be awarded to county in § 1983 action); Shaw v. Coosa County Comm'n, 330 F. Supp. 2d 1285, 1287-88 (M.D. Ala. 2004) (dismissing claims for punitive damages against the county commission and stating: "[I]t is well-settled that local government entities are immune from punitive damages in action brought pursuant to 42 U.S.C. § 1983."); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Wheeler v. City of Pleasant Grove, Ala., 883 F.2d 267, 271 (11th Cir. 1987); Housing Investors, Inc. v. City of Clanton, Ala., 68 F. Supp. 2d 1287, 1296 (M.D. Ala. 1999). Accordingly, because Barbour County is immune from punitive damages under 42 U.S.C. § 1983, all claims for punitive damages against Barbour County under § 1983 are due to be dismissed.

**B.    Barbour County is immune from punitive damages under state law.**

State law additionally prohibits punitive damages from being awarded against Barbour County. See Ala. Code § 6-11-26 ("Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof"); Smitherman v. Marshall County Comm'n, 746 So. 2d 1001, 1004 (Ala. 1999) (holding that the county is immune from punitive damages based on Ala. Code 1975, § 6-11-26); Harrelson v. Elmore County, Ala., 859 F. Supp. 1465, 1469 (M.D. Ala. 1994) (applying statute to strike punitive damages claims made under state law); Shaw, 330 F. Supp. 2d at 1287 (M.D. Ala. 2004) (dismissing claims for punitive damages against the county commission and stating: "[P]unitive damages may not be awarded against [the county commission] pursuant to Alabama law."). As a result, the Plaintiff's claims for punitive damages under state law are also due to be dismissed.

24

## CONCLUSION

Based upon the foregoing, Defendant Barbour County, Alabama, requests this Court to grant its Motion to Dismiss and enter an order dismissing all claims against it in this action.

Respectfully submitted this the 22nd day of January, 2008.

> **s/C. Richard Hill, Jr.**
> C. RICHARD HILL, JR. (HIL045)
> JOSEPH L. HUBBARD, JR. (HUB015)
> Attorneys for Defendant
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1772
> E-mail:  rhill@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on the **22nd** day of **January**, **2008**, I electronically filed the foregoing with the Clerk of the Court using the AlaFile system, which will send notification of such filing to the following:  **Thomas H. Benton**; **Bryan G. Duhe**, attorneys for the Plaintiff**.**

> **s/C. Richard Hill, Jr.**
> OF COUNSEL

**Exhibit A**

ELECTRONICALLY FILED
10/1/2007 2:34 PM
CV-2007-901225.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

MICHAEL TRAVIS BUCKLEY,        *
                               *
     Plaintiff,                *
                               *
vs.                            *        CIVIL ACTION NO.
                               *
BARBOUR COUNTY, A, B and C,    *        CV-07-_____
being the individuals, partnerships,    *
corporations, or other entities whose   *
names and identities are otherwise      *
unknown to the Plaintiff at this time   *
but will be added by amendment          *
when ascertained and who were           *
responsible for and did in fact         *
negligently and/or wantonly fail to     *
supervise or properly monitor the       *
activities of the job in question       *
which ultimately led to the Plaintiff's *
injuries and damages;                   *
D, E and F, being the individuals,      *
partnerships, corporations, or other    *
entities whose names and identities     *
are otherwise unknown to the            *
Plaintiff at this time but will be      *
added by amendment when                 *
ascertained and who negligently         *
and/or wantonly failed to train         *
individuals on the job in question      *
and which ultimately led to the         *
Plaintiff's injuries and  damages;      *
G, H and I, being the individuals,      *
partnerships, corporations, or other    *
entities whose names and identities     *
are otherwise unknown to the            *
Plaintiff at this time but will be      *
added by amendment when                 *
ascertained and who were                *
responsible for and did in fact         *
negligently and/or wantonly fail        *
to follow safety procedures             *
outlined by local, state or federal     *

authorities regarding the proper              *
and safe manner and method for                *
removing trees and/or right of way            *
debris;  J, K and L, being the                *
individuals, partnerships,                    *
corporations, or other entities               *
whose names and identities                    *
are otherwise unknown to the                  *
Plaintiff at this time but will be            *
added by amendment when                       *
ascertained and who in any way                *
caused or contributed to the                  *
Plaintiff's injuries and/or damages           *
and who negligently and/or wantonly           *
trained and/or failed to  properly            *
supervise the activities of the               *
workers on the day in question and            *
whose negligence and/or wantonness            *
caused the Plaintiff's injuries               *
and/or damages,                               *
                                              *
     Defendants.     *

## COMPLAINT

1. Michael Travis Buckley, hereinafter referred to as Plaintiff, was 19 years of age

or older and a resident of Mobile County, Alabama on November 10, 2006, the date of the

incident complained of herein.

2. The Defendant, Barbour County, was doing business in Barbour County, Alabama

on November 10, 2006.

3. The Defendants, A, B and C, are the individuals, partnerships, corporations, or other

entities whose names and identities are otherwise unknown to the Plaintiff at this time but

will be added by amendment when ascertained and who were responsible for and did in fact

negligently and/or wantonly fail to supervise or properly monitor the activities of the job in

question which ultimately led to the Plaintiff's injuries and damages.

4. The Defendants, D, E and F, are the individuals, partnerships, corporations, or other entities whose names and identities are otherwise unknown to the Plaintiff at this time but will be added by amendment when ascertained and who negligently and/or wantonly failed to train individuals on the job in question and which ultimately led to the Plaintiff's injuries and damages.

5. The Defendants, G, H and I, are the individuals, partnerships, corporations, or other entities whose names and identities are otherwise unknown to the Plaintiff at this time but will be added by amendment when ascertained and who were responsible for and did in fact negligently and/or wantonly fail to follow safety procedures outlined by local, state or federal authorities regarding the proper and safe manner and method for removing trees and/or right of way debris.

6. The Defendants, J, K and L, are the individuals, partnerships, corporations, or other entities whose names and identities are otherwise unknown to the Plaintiff at this time but will be added by amendment when ascertained and who in any way caused or contributed to the Plaintiff's injuries and/or damages and who negligently and/or wantonly trained and/or failed to properly supervise the activities of the workers on the day in question and whose negligence and/or wantonness caused the Plaintiff's injuries and/or damages.

7. On or about November 10, 2006, Michael Travis Buckley, while incarcerated by the State of Alabama, was loaned to Barbour County to clear roads. While working in a ditch, a co-worker cut a tree which fell onto the Plaintiff, rendering him paraplegic.

## COUNT ONE
## NEGLIGENCE

8.  The Defendants negligently and/or wantonly caused or allowed a tree to be cut which landed upon the Plaintiff causing him to suffer injuries and damages described above.

WHEREFORE,  the Plaintiff demands judgment against the Defendants in that sum allowed by Alabama law in excess of  $50,000.00 together with costs and all damages allowed.

## COUNT TWO
## NEGLIGENT SUPERVISION

9.  The Plaintiff adopts and realleges paragraphs 1-8 in their entirety as if set out fully herein.

10.  The Defendants negligently and/or wantonly failed to adequately supervise the crew in question and said lack of supervision led to the Plaintiff's injuries and/or damages described above.

WHEREFORE,  the Plaintiff demands judgment against the Defendants in that sum allowed by Alabama law in excess of  $50,000.00 together with costs and all damages allowed.

## COUNT THREE
## NEGLIGENT FAILURE TO TRAIN

11.  The Plaintiff adopts and realleges paragraphs 1-10 in their entirety as if set out fully herein.

12.  The Defendants negligently and/or wantonly failed to adequately train members of the crew responsible for work being performed  by the Plaintiff and crew  in Barbour

County. As a result of the Defendants' negligence and/or wantonness, the Plaintiff was caused to suffer injures and damages described above.

WHEREFORE, the Plaintiff demands judgment against the Defendants in that sum allowed by Alabama law in excess of $50,000.00 together with costs and all damages allowed.

## COUNT FOUR
## EMPLOYER'S LIABILITY ACT

13. The Plaintiff adopts and realleges paragraphs 1-12 in their entirety as if set out fully herein.

14. The Defendants are guilty of violating the Employer's Liability Act. As a result of the same, the Plaintiff was caused to suffer the injuries and damages described above.

WHEREFORE, the Plaintiff demands judgment against the Defendants in that sum allowed by Alabama law in excess of $50,000.00 together with costs and all damages allowed.

## COUNT FIVE
## MENTAL ANGUISH

15. The Plaintiff adopts and realleges paragraphs 1-14 in their entirety as if set out fully herein.

16. As a result of the Defendants' conduct the Plaintiff suffered pain and mental anguish.

WHEREFORE, the Plaintiff demands judgment against the Defendants in that sum allowed by Alabama law in excess of $50,000.00 together with costs and all damages

allowed.

BY:  /s/Bryan G. Duhe'
          Attorney for Plaintiff (DUH001)
          2500 Dauphin Street
          Mobile, Alabama 36606
          (251) 479-6500
          (251) 479-3575 - Fax
          bryanduhe@aol.com

**PLAINTIFF RESPECTFULLY REQUESTS A TRIAL BY JURY**

Please serve the Defendant, <u>Barbour County,</u> at the following address:

c/o Ms. Jackie Guthrie
County Administrator
Post Office Box 398
Clayton, Alabama 36016

# Exhibit B

ELECTRONICALLY FILED
11/2/2007 12:59 PM
CV-2007-901225.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

| | |
|---|---|
| **MICHAEL TRAVIS BUCKLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. : CV-2007-901225** |
| ) | |
| **BARBOUR COUNTY, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

### MOTION TO DISMISS OF
### DEFENDANT BARBOUR COUNTY, ALABAMA

COMES NOW Barbour County, Alabama, a Defendant in the above-styled cause, and moves this Honorable Court to dismiss the action against it pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3) and 12(b)(6) of the Alabama Rules of Civil Procedure for lack of jurisdiction over the subject matter, lack of jurisdiction over the person, improper venue, and failure to state a claim upon which relief can be granted. As grounds therefor, Defendant Barbour County sets down and assigns the following:

1.      The Plaintiff's claims against this Defendant are due to be dismissed for the following reasons:

      a.      The Defendant is entitled to absolute sovereign immunity (a/k/a State immunity) as a matter of law;

      b.      The Plaintiff's Complaint is expressly barred by statute;

      c.      The Plaintiff failed to comply with Alabama's nonclaim statutes regarding claims against counties;

      d.      The Plaintiff's allegations fail to state a claim upon which relief may be granted;

     e.    The Plaintiff's negligence and wantonness claims are barred by his contributory negligence; and

     f.    The lack of an employer-employee relationship precludes the Plaintiff's attempt to state a claim for violation of the Employer's Liability Act.

    2.    Furthermore, the venue selected by the Plaintiff is improper. Therefore, a Motion for Transfer of Venue is being filed contemporaneously with this Motion to Dismiss.

    WHEREFORE, PREMISES CONSIDERED, Defendant Barbour County, Alabama moves this Honorable Court to dismiss this action against it and requests this Court grant unto it its costs in defending this matter.

    RESPECTFULLY SUBMITTED this the 2nd day of November, 2007.


                            **s/C. Richard Hill, Jr.**
                            C. RICHARD HILL, JR. (HIL045)
                            Attorney for Defendant

OF COUNSEL:

WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama 36124
Telephone: (334) 262-1850
Fax: (334) 262-1772
E-mail: rhill@webbeley.com

## CERTIFICATE OF SERVICE

    I hereby certify that on the 2nd day of November, 2007, I electronically filed the foregoing with the Clerk of the Court using the AlaFile system, which will send notification of such filing to the following: **Bryan G. Duhe, Esquire.**


                            **s/C. Richard Hill, Jr.**
                            OF COUNSEL

ELECTRONICALLY FILED
11/2/2007 1:03 PM
CV-2007-901225.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

| | | |
|---|---|---|
| **MICHAEL TRAVIS BUCKLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. : CV-2007-901225** |
| | ) | |
| **BARBOUR COUNTY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM BRIEF IN SUPPORT OF
### DEFENDANT'S MOTION TO DISMISS

COMES NOW Barbour County, Alabama, a Defendant in the above-styled cause, and submits this Memorandum Brief in support of its contemporaneously filed Motion to Dismiss. In support thereof, this Defendant states as follows:

### INTRODUCTION

On or about November 10, 2006, Plaintiff Michael Travis Buckley ("Plaintiff"), while incarcerated by the State of Alabama, was loaned to Barbour County to clear roads. (Plaintiff's Complaint, ¶ 7.) While working in a ditch, a co-worker allegedly cut a tree which fell onto the Plaintiff, rendering him paraplegic. (Id.)

The Plaintiff initiated the instant action when he filed a complaint on October 1, 2007. His Complaint attempts to state claims against Defendant Barbour County, Alabama, and various fictitious defendants designated by the Plaintiff as defendants A through L for negligence, negligent supervision, negligent failure to train, violation of the Employer's Liability Act, and mental anguish. (Plaintiff's Complaint.) For the reasons set out below, the Complaint fails to state a claim against Defendant Barbour County and is due to be dismissed in its entirety.

## STANDARD OF REVIEW

A motion to dismiss should be granted "when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could [not] prove any set of circumstances that would entitle [the pleader] to relief." Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993). As indicated by Rule 8, Ala. R. Civ. P., one of the critical functions of a complaint is to put the defendant on notice of the claim(s) against him. Radenhausen v. Doss, 819 So. 2d 616, 620 (Ala. 2001) quoting Bethel v. Thorn 757 So. 2d 1154, 1158 (Ala. 1999) (citing Phillips Colleges of Ala., Inc. v. Lester, 622 So. 2d 308, 311 (Ala. 1993)); Rutley v. Country Skillet Poultry Co., 549 So. 2d 82, 84-85 (Ala. 1989) quoting Archie v. Enterprise Hosp. & Nursing Home, 508 So. 2d 693, 696 (Ala. 1987). In order to satisfy the requirements of Rule 8, Ala. R. Civ. P., "the claim for relief must give the opposing party fair notice of the pleader's claim and the grounds upon which that claim rests." Christy v. Smith Mountain, Inc., 855 So. 2d 1103, 1106 (Ala. Civ. App. 2003) citing Mitchell v. Mitchell, 506 So. 2d 1009 (Ala. Civ. App. 1987). It is significant that "[t]he law does not require pleadings to be in the form of grammatical niceties." Bugg v. Mitchell, 103 So. 713, 716 (Ala. App. 1925).

"A motion to dismiss is properly granted when no set of facts exists that would support the plaintiff's claim." Graul v. S & R Travels, Inc., 773 So. 2d 1049, 1050 (Ala. Civ. App. 1999) citing Feore v. Feore, 627 So. 2d 411 (Ala. Civ. App. 1993). "A dismissal under Rule 12(b)(6) is appropriate where the allegations of the complaint, even if proven, would not support a claim entitling the pleader to relief." Blackwood v. Davis, 613 So. 2d 886, 887 (Ala. 1993). "Dismissal, then, is warranted only when the allegations of the complaint itself clearly demonstrate that the plaintiff does not have a claim." Lavoie v. Aetna Life & Cas. Co., Inc., 374 So. 2d 310, 311 (Ala. 1979) citing 5 Wright & Miller, Federal Practice & Procedure § 1357 (1969). The courts have no responsibility to

"create a claim which the plaintiff has not spelled out in the pleadings." McCullough v. Alabama By-Products Corp., 343 So. 2d 508, 510 (Ala. 1977) citing Case v. State Farm Mut. Auto. Ins. Co., 294 F.2d 676 (5th Cir. 1961).

The Plaintiff's Complaint is due to be dismissed for at least five reasons. First, the Defendant is entitled to absolute sovereign immunity as an agent of the State. Second, the Plaintiff's Complaint is expressly barred by statute. Third, the Plaintiff failed to comply with Alabama's nonclaim statutes. Fourth, the Plaintiff's allegations fail to state a claim upon which relief may be granted. Fifth, the lack of an employer-employee relationship precludes the Plaintiff's attempt to state a claim for violation of the Employer's Liability Act.

## ARGUMENT

## I.     BARBOUR COUNTY IS ENTITLED TO ABSOLUTE SOVEREIGN IMMUNITY AS AN AGENT OF THE STATE OF ALABAMA.

The legal basis for absolute sovereign immunity (a/k/a State immunity) is straightforward and well settled. The Alabama Constitution of 1901 prohibits suits against the State of Alabama. See Ala. Const. of 1901, art. I, § 14 ("the State of Alabama shall never be made a defendant in any court of law or equity"); see also Ex parte Ala. Dep't of Mental Health and Mental Retardation, 837 So. 2d 808, 811 (Ala. 2002) ("The courts of this State lack subject-matter jurisdiction over actions brought contrary to § 14.") (citation omitted); Larkins v. Dep't of Mental Health and Mental Retardation, 806 So. 2d 358, 363 (Ala. 2001) ("an action contrary to the State's immunity is an action over which the courts of this State lack subject-matter jurisdiction"). Article I, § 14 expressly prohibits suits against the State of Alabama and its departments and agencies. See Ex parte Ala. Dep't of Transportation, ---So. 2d ----, 2007 WL 2070347, *3 (Ala. July 20, 2007) quoting Haley v. Barbour County, 885 So. 2d 783, 788 (Ala. 2004) ("This Court has repeatedly held that § 14, Ala. Const. 1901, 'affords the State and its agencies an 'absolute' immunity from suit in any court'."); Ex parte Tuscaloosa County, 796

3

So. 2d 1100, 1103 (Ala. 2000) ("Under Ala. Const. of 1901, § 14, the State of Alabama has absolute immunity from lawsuits.").

There are, however, exceptions to the State's absolute sovereign immunity. For instance,

> '[a] state official is not immune from an action that (1) seeks to compel a state official to perform his or her legal duties, (2) seeks to enjoin a state official from enforcing unconstitutional laws, (3) seeks to compel a state official to perform ministerial acts, or (4) seeks a declaration under the Declaratory Judgments Act, § 6-6-220 et seq., Ala. Code 1975, construing a statute and applying it in a given situation'.

Latham v. Department of Corrections, 927 So. 2d 815, 821 (Ala. 2005). Other actions that are not prohibited by § 14 include:

> '(5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law'.

Drummond Co. [v. Alabama Dep't of Transportation], 937 So. 2d [56,] 58 [(Ala. 2006)] (emphasis omitted).

Ex parte Ala. Dep't of Transportation, --- So. 2d ----, 2007 WL 2070347, *2.

The Alabama Department of Corrections (DOC) is a department of the State. Latham, 927 So. 2d at 820; Ex parte Daniels, 941 So. 2d 251, 255 (Ala. 2006) ("the Department of Corrections 'is a department of the State'") (citation omitted). As such, the DOC – like the State – is cloaked with absolute sovereign immunity unless one of the foregoing exceptions applies. Carpenter v. Tillman, 948 So. 2d 536 (Ala. 2006) ("Section 14 provides absolute immunity to agencies of the State, including the DOC.") (citation omitted); Latham, 927 So. 2d at 820 citing Haley, 885 So. 2d at 788 ("DOC is a department of the State and therefore is entitled to sovereign immunity."); Rodgers v. Hopper, 768 So. 2d 963, 968 (Ala. 2000) (concluding that the DOC "is entitled to sovereign immunity").

4

An Alabama county ordinarily does not enjoy immunity from actions against it for negligence; however, under circumstances like those presented by the case at bar, a county is entitled to share in the State's sovereign immunity. The following decisions of the Alabama Supreme Court help explain why Barbour County is entitled to absolute sovereign immunity in this case; that is, Barbour County's Motion to Dismiss is due to be granted because, even if the Plaintiff's allegations could be proven, his claims are barred by absolute sovereign immunity.

This Court need look no further than Town of Loxley v. Coleman, 720 So. 2d 907 (Ala. 1998), for authority requiring the dismissal of the Plaintiff's claims. In Town of Loxley v. Coleman, the plaintiff, a state prisoner participating in a work-release program through which he worked for the Town of Loxley, Alabama, was being transported in a truck driven by Town of Loxley employee, Barbara Denham. As Denham transported the plaintiff and other work-release prisoners, the plaintiff fell from the back of the truck. The plaintiff sued Denham and the Town of Loxley ("defendants") alleging that they had negligently or wantonly caused the injuries he suffered in the fall. The defendants moved for summary judgment on the basis of their entitlement to sovereign immunity. The trial court denied their motions for summary judgment and the defendants appealed.

On appeal, the Alabama Supreme Court's first task was to determine whether the Town and Denham were acting as agents of the State when Coleman fell. Town of Loxley, 720 So. 2d at 908. According to the court, this inquiry was significant because if the Town and Denham were acting as agents of the State when Coleman was injured, those parties would be "entitled to the protection of the State's immunity from suit pursuant to § 14, Ala. Const. of 1901, unless one of the exceptions applie[d]." Id. citing Alexsis, Inc. v. Terry, 675 So. 2d 1321 (Ala. Civ. App. 1996) (holding that the company administering a self-insurance program for the Department of Transportation was an agent for the Department and was, therefore, immune from suit) and Bowden v. Southern Risk Servs., Inc.,

5

574 So. 2d 813 (Ala. Civ. App. 1990), cert. quashed, 574 So. 2d 815 (Ala. 1991). The court's analysis posited that "[h]ad the Department of Corrections been transporting Coleman, there would be no question that the doctrine of sovereign immunity would apply." Town of Loxley, 720 So. 2d at 908. Ultimately, the Town of Loxley and Denham were found to have been "acting as agents of the State, by reason of their service in transporting Coleman and other inmates as a part of the work-release program." Id.

The undeniable similarity between the facts of Town of Loxley v. Coleman and the facts of the instant case compel the conclusion that Barbour County was acting as an agent of the State at the time of the Plaintiff's alleged injury and is therefore entitled to absolute sovereign immunity. The Plaintiff, like Coleman, was a state prisoner participating in a work-release program with a government entity when he suffered his injury. See Plaintiff's Complaint, ¶ 7. As the court astutely observed in Town of Loxley, had the Plaintiff been under the immediate supervision of the Department of Corrections, "there would be no question that the doctrine of sovereign immunity would apply." Town of Loxley, 720 So. 2d at 908. Like the town of Loxley, Barbour County was acting as an agent of the State of Alabama (via the DOC) at all times material to the Plaintiff's allegations and is therefore entitled to absolute sovereign immunity from the Plaintiff's claims. See Ex parte Tuscaloosa County, 796 So. 2d 1100, 1103 (Ala. 2000) ("when a county or municipality acts as an agent of the state, it is entitled to share in the state's absolute immunity") (citations omitted); Rutledge v. Baldwin County Comm'n, 495 So. 2d 49, 53 (Ala. 1986) (finding that the County and its officials and employees enjoy the State's constitutional immunity for acts and omissions that occur in the course of performing functions of the State on behalf of the State).

The foregoing authority clearly demonstrates that Barbour County was acting as an agent of the State at all times material to the Plaintiff's allegations. Because absolute sovereign immunity

(a/k/a State immunity) bars all of Plaintiff's claims against Barbour County, its Motion to Dismiss is

due to be granted in full and all claims against it dismissed.

## II.     THE PLAINTIFF'S COMPLAINT IS BARRED BY STATUTE.

In 1995, the Alabama Legislature declared its intent

> to require the Department of Corrections to develop, within six months after July 31, 1995, a manual labor work program for all inmates....The manual labor required of the inmate shall be as rigorous as the department feels is justified, but shall consist primarily of the *removal of litter from the highways of this state*, the cleaning of unauthorized dumps and public cemeteries, the growing and raising of food for use by inmates or for sale to reduce the costs of incarceration to the taxpayers, and *the cleaning and maintenance* of public parks, or municipal, *county, or state property*. It is the further intent of the Legislature to require the department to assign all inmates who do not have a mental or physical impairment which would prevent them from performing manual labor to the manual labor work program and to develop a work incentive program.

Ala. Code § 14-5-30 (emphasis added).

More than fifty years earlier, the Alabama Legislature enacted Ala. Code § 14-5-10 which

authorized the Board of Corrections

> to hire or lease convicts to any department, agency, board, bureau or commission of the state on such terms, conditions and at such prices as may be mutually agreed upon. Any department, agency, board, bureau or commission of the state is hereby authorized to contract with the board for the lease or hire of convicts upon such terms, conditions and at such price as may be mutually agreed upon.

Ala. Code § 14-5-10.  Alabama lawmakers wisely predicted the potential for litigation arising from

the hiring and/or leasing of convicts and therefore passed the following legislation, which states in

pertinent part:

> Any inmate participating in a work release program authorized by this chapter or otherwise working outside the jail or a correctional facility *shall have no cause of action against the county* or a community correction agency, or an employee thereof, related to such activities, unless the county or community corrections agency, or employee thereof, is *willfully negligent* in carrying out their responsibilities.

Ala. Code § 14-8-40 (emphasis added).

The foregoing statute makes clear that the Plaintiff is barred from maintaining a cause of action against Barbour County unless the County, or an employee thereof, is willfully negligent in carrying out his, her or its responsibilities. The Plaintiff's Complaint does not allege willful negligence on the part of any Defendant, much less Defendant Barbour County. As a result, the Plaintiff's Complaint is barred by Ala. Code § 14-8-40 with respect to this Defendant and is due to be dismissed.

### III.    THE PLAINTIFF'S COMPLAINT IS DUE TO BE DISMISSED BECAUSE OF HIS FAILURE TO SATISFY ALABAMA'S NONCLAIM STATUTES REGARDING CLAIMS AGAINST COUNTIES.

A plaintiff is precluded from filing a lawsuit against an Alabama county until he or she has presented a claim to the county commission for damages and such claim has been "disallowed or reduced by the commission and the reduction refused by the claimant." Ala. Code § 6-5-20(a). However, "[n]o claim against the county shall be passed upon or allowed by the county commission unless it is itemized by the claimant or some person in his behalf having personal knowledge of the facts." Ala. Code § 11-12-5.

With respect to the itemization required by § 11-12-5, "the 'items' should include a factual background, a description of the event or transaction giving rise to the claim, the alleged basis for the county's liability for damages resulting from the event or transaction, the nature of the damages, and the compensation demanded." Elmore County Comm'n v. Ragona, 540 So. 2d 720, 723 (Ala. 1989) citing Merrill v. Blount County, 133 So. 2d 212 (Ala. 1961). A plaintiff's complaint cannot remedy deficiencies in his or her claim to the county commission, nor can it operate to provide the requisite notice if the plaintiff's claim failed to do so. Ford v. Jefferson County, 774 So. 2d 600, 606 (Ala. Civ. App. 2000). Additionally, "[i]t has long been the law that a complaint seeking to recover on a claim against a county must allege that the statement of the claim was itemized and verified as required by

[statute]." Merrill, 133 So. 2d at 213 (citations omitted); see Jeter v. Montgomery County, 480 F. Supp. 2d 1293, 1299 & 1299 n.3 (M.D. Ala. 2007) (dismissing one count of complaint where, inter alia, complaint did not allege that plaintiff presented her claim prior to filing suit); Rice v. Tuscaloosa County, 4 So. 2d 497, 500 (Ala. 1941); Scarbrough v. Watson, 37 So. 281, 281 (Ala. 1904).

The Plaintiff's Complaint is due to be dismissed for several of the reasons listed immediately above. First, his Complaint does not allege that an itemized and verified claim was presented to and disallowed, or otherwise rejected by, the Barbour County Commission. This deficiency requires dismissal of the Complaint. See Jeter, 480 F. Supp. 2d 1293, 1299 & 1299 n.3; Merrill, 133 So. 2d at 213; Rice, 4 So. 2d at 500; Scarbrough, 37 So. at 281. Second, while the Defendant concedes that the Plaintiff submitted a document to the Barbour County Commission that purports to be a verified statement pursuant to Ala. Code §§ 6-5-20, 11-12-5, 11-12-6 and 11-12-8, see Exhibit A[1] (attached hereto), that purported verified statement does not satisfy the requirements of Ala. Code §§ 6-5-20, 11-12-5, 11-12-6 and/or 11-12-8.

In Helms v. Barbour County, 914 So. 2d 825 (Ala. 2005), the issue before the Alabama Supreme Court was whether the claim presented to the Barbour County Commission pursuant to § 6-5-20 was sufficiently "itemized" to notify the County of the alleged basis for the County's liability and for the compensation demanded. After a review of Ragona, supra, the court concluded that the plaintiffs' § 6-5-20 claim to the County was sufficient for the following reasons: it

---

[1] Defendant's inclusion, and the Court's consideration, of Plaintiff's alleged verified statement as Exhibit A does not require conversion of this Motion to Dismiss to a motion for summary judgment. See Donoghue v. American Nat. Ins. Co., 838 So. 2d 1032, 1035 (Ala. 2002) quoting Ala. R. Civ. P. 12(b) ("In general, exhibits provided in support of motions to dismiss under Rule 12(b)(6) are considered 'matters outside the pleading' and effectively convert the motion into a motion for a summary judgment."). In Donoghue, supra, the court was "persuaded to embrace the well-founded rule adopted by the Alabama Court of Civil Appeals precluding conversion when the exhibits in question are referred to in, and are central to, the plaintiff's complaint." Donoghue, 838 So. 2d at 1035. Although the Plaintiff's alleged verified statement pursuant to Ala. Code §§ 6-5-20, 11-12-5, 11-12-6 and 11-12-8 was not referred to in the Complaint, should have been referred to and is, without a doubt, central to the Plaintiff's Complaint. Accordingly, Defendant's submission of Plaintiff's alleged verified statement as an exhibit to this Motion to Dismiss is necessary to demonstrate why the Complaint is deficient and due to be dismissed. As a result, Defendant's Motion to Dismiss need not be converted to a motion for summary judgment.

include[d] a detailed description of the property as to which the claim was being asserted, a description of when and how the improvements to the property were made by the Helmses, a description of when and how the grading operation resulted in both damage to the property and an improper taking through expansion of the County's right of way without compensation, a description of the nature of the damage and a dollar figure for the damages resulting from the loss of the pine trees.

Helms, 914 So. 2d at 829.

In response to the defendant's argument that the plaintiffs' § 6-5-20 claim did not state that the damage to their property was caused by the County, and was therefore not properly itemized, the Helms court dismissed defendant's assertion as "without merit because both parties stipulated that an employee of the County destroyed many of the Helmses' young pine trees in the process of grading what remained of the vertical bank." Id. at 830. The defendant next argued that the plaintiffs' § 6-5-20 claim was not properly itemized because the claim did not state the basis for the County's liability. The court similarly rejected this proposition after determining that the language of the plaintiffs' claim provided adequate notice of the theories of liability that they ultimately asserted in their complaint.[2] The bases for a county's liability stated by a plaintiff in his or her § 6-5-20 claim must at least be substantially the same as the bases of liability stated in his or her complaint against the county. Id.

Finally, the defendant insisted that the plaintiffs' § 6-5-20 claim was not properly itemized because it did not demand compensation. This argument was also denied because,

on the trespass claim, the Helmses specified a dollar figure ($6,500) for the value of the pine trees that were destroyed. And, on the taking claim, in lieu of remuneration, the Helmses requested an acknowledgment of the improper expansion of the right of way and assurance from the County that the grader would not "improperly scrape" their property in the future. Furthermore, the form of relief requested in the § 6-5-20 claim and the complaint is substantially the same.

Id.

---

[2] Specifically, the court found that the plaintiffs' claim "allege[d] a trespass claim with the following language: 'During the scraping process the grader went outside of the established right-of-way and *came upon the property of the claimants.* This caused the long leaf pines to be destroyed.'" Helms, 914 So. 2d at 830. The plaintiffs' claim also alleged an "improper taking" claim when they stated: "'[t]his further caused the right-of-way to be expanded without the consent of the property owners and without compensation to the property owners'." Id.

In the case at bar, the Plaintiff's purported verified statement to the Barbour County Commission fails each of the tests set out in Helms. First, there is no indication, much less an express allegation, that Defendant Barbour County caused the Plaintiff's injury. Indeed, the verified statement tends to show that another inmate proximately caused the Plaintiff's injury. See Ex. A ("On or about November 10, 2006,…another inmate using a Barbour County chainsaw cut a tree which landed on top of me in a ravine, crushing my back."). Second, the verified statement does not state a basis for the Defendant's alleged liability, and it certainly does not identify the theories of liability asserted by the Plaintiff in his Complaint (i.e., negligence, negligent supervision, violation of the Employer's Liability Act and mental anguish). See Kelly v. Owens, 2006 WL 3421257, *7-8 (M.D. Ala. November 28, 2006) (concluding that Rule 12(b)(6) dismissal was required where plaintiff failed to provide sufficient pre-lawsuit notice of a particular claim to county commission); Jacks v. Madison County, 741 So. 2d 429, 433-34 (Ala. Civ. App. 1999) (affirming the dismissal of claims in plaintiff's complaint that were founded on theories not set out in the claim she submitted to the county pursuant to Ala. Code § 11-12-5, et seq.). Third, the form of relief requested in the verified statement and the form of relief requested in the Complaint are *not* substantially the same.

The Plaintiff's Complaint failed to allege the presentation and disallowance of an itemized and verified claim to the Defendant. Moreover, the Plaintiff failed to present the Defendant a properly verified and itemized claim as required by Alabama law. As a result, his Complaint is due to be dismissed.

## IV.   THE DEFENDANT IS DUE TO BE DISMISSED AS THE PLAINTIFF'S ALLEGATIONS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Assuming, *arguendo*, that Barbour County is not dismissed on at least one of the grounds already asserted, its Motion to Dismiss is nevertheless due to be granted because of the Plaintiff's

failure to state a claim for negligence or wantonness. Specifically, the Plaintiff's Complaint is comprised of legal conclusions, not allegations of fact; for this reason, it fails to state a claim and is due to be dismissed. See Buchanon v. City Bd. of Educ., 262 So. 2d 296, 297 (Ala. 1972) (describing plaintiff's pleading, which alleged in conclusory fashion "acts of misfeasance and malfeasance on the part of the defendants," as "faulty in a variety of ways in attempting to state a cause of action"); Bell v. National Life & Acc. Ins. Co., 123 So. 2d 598, 600 (Ala. Ct. App. 1960) ("It is only 'mere conclusions' or 'bald conclusions,' without supporting facts which are objectionable in pleading'.") (citations omitted); Terrell v. Alabama Water Service Co., 15 So. 2d 727, 731 (Ala. 1943) (reiterating that when a plaintiff does not allege facts which show that particular conduct was wrongful, the plaintiff has stated only a legal conclusion, which is insufficient) (citation omitted).

The only allegation specific to this Defendant is the Plaintiff's claim that "[t]he Defendant, Barbour County, was doing business in Barbour County, Alabama on November 10, 2006." (Plaintiff's Complaint, ¶ 2.) The remainder of the Plaintiff's Complaint consists of nothing more than bare accusations of negligent and/or wanton conduct. As the decisions cited immediately above illustrate, this method of pleading is inadequate and cannot be relied on to state a claim for relief. See Buchanon, 262 So. 2d at 297; Bell, 123 So. 2d at 600; Terrell, 15 So. 2d at 731.

### A.    The Plaintiff's Allegations Fail to State a Claim for Negligence.

Before liability can be imposed under a negligence theory, four critical elements must be proven: duty, breach, causation and injury. See Zanaty Realty, Inc. v. Williams, 935 So. 2d 1163, 1167 (Ala. 2005).

> With regard to the negligence and/or wantonness claim, we recognize that before liability for negligence can be imposed upon a governmental entity, there must first be a breach of a legal duty owed by that entity. *Shearer v. Town of Gulf Shores*, 454 So. 2d 978 (Ala. 1984). In determining whether a claim is valid, the initial focus is upon the nature of the duty. *Rich v. City of Mobile*, 410 So. 2d 385 (Ala. 1985). There must

be either an underlying common law duty or a statutory duty of care with respect to
the alleged tortious conduct.

Hilliard v. City of Huntsville, 585 So. 2d 889, 890 (Ala. 1991). "The determination as to the existence

of a duty is for the court, and not for the jury." Collins Co., Inc. v. City of Decatur, 533 So. 2d 1127,

1134 (Ala. 1988) (citation omitted).

Unlike some states, Alabama has not recognized a duty on the part of the Department of

Corrections, much less an individual or entity other than the DOC, to provide inmates a safe work

environment or reasonably safe tools or machinery for specified work. More importantly, the Plaintiff

*does not allege* that the DOC or Defendant Barbour County owed him any duty whatsoever. See,

generally, Plaintiff's Complaint; Warden v. Thigpen, 563 So. 2d 1021, 1022 (Ala. 1990) (concluding

that *pro se* plaintiff failed to "state a cause of action upon which relief can be granted, even under our

liberal pleading standards," because he neglected to allege a fact critical to his claim).

Even in jurisdictions where the Department of Corrections has a duty to provide inmates with

a reasonably safe place to work and with equipment that is reasonably safe for performing required

tasks, it is well established that "the Department is not the insurer of the safety of inmates in prisons.

Its duty is to exercise reasonable care to protect an inmate against unreasonable risk of *foreseeable*

harm. It is not required to anticipate and warn against every possible danger to which an inmate may

be exposed." Perro v. State, 517 So. 2d 258, 261 (La. Ct. App. 1987) (citations omitted). Indeed, the

Perro court affirmed the trial court's finding that the inmate-plaintiff was contributorily negligent in

using a saw that did not have a guard on it. Id. at 261; see Carter v. State, 598 N.Y.S.2d 853, 853

(N.Y. App. Div. 1993) ("when an inmate fails to use ordinary care and pursues a dangerous course of

conduct, he must take some responsibility for his own negligence"); Evans v. Travelers Ins. Co., 351

So. 2d 783 (La. Ct. App. 1977) (holding that inmate's contributory negligence barred his recovery as

it was unreasonable for him to place himself in a precarious position on the fender of a tractor driven

13

by another inmate); Smith v. Raleigh Granite Co., 162 S.E. 731, 733 (N.C. 1932) ("where the prisoner of his own volition chooses an unusually dangerous method of executing the contractor's commands, he may be barred by contributory negligence") (citation omitted).

This Defendant had no duty to provide the Plaintiff, or members of the crew the Plaintiff was working with, training or instruction concerning the work they would be doing, especially under the facts of the instant incident.[3]  Consider, for instance, A.A. Elec. Co. v. Ray, 149 S.W.2d 38 (Ark. 1941), in which the Arkansas Supreme Court observed that even if the decedent "was inexperienced in the matter of felling trees, What warning could the master have given him that he did not already know?" A.A. Elec. Co., 149 S.W.2d at 39. Similarly, what warning or training could Barbour County or any of its officers or employees have issued to the Plaintiff to avert this incident? As the Plaintiff describes it, his injury was so unforeseeable that no training, warning or safety equipment could have prevented it. See Sellens v. Christman, 418 S.W.2d 6 (Mo. 1967) (holding that property owner had no duty to warn neighbor of open and obvious danger presented by cut tree lodged in the top of another tree where neighbor helped rock and cut trees in attempt to dislodge tree that had not completely fallen). The Plaintiff appears to have experienced an unfortunate injury precipitated by his own contributory negligence for which Barbour County cannot be held responsible. See Mann v. Smith, 561 So. 2d 1112, 1115 n.1 (Ala. 1990) (Maddox, J., concurring specially) ("'It is axiomatic that the mere happening of an accident raises no presumption of negligence'.") (citation omitted); Muhammad v. State, 790 N.Y.S.2d 570, 571 (N.Y. App. Div. 2005) (State Department of Corrections "'is not an insurer of inmate safety, and negligence cannot be inferred solely from the happening of an incident'") (citations omitted). Because the Defendant did not have a duty with respect to the

---

[3] It is significant that none of the specific allegations found in paragraphs 3 through 6 of the Plaintiff's Complaint are directed at Defendant Barbour County. See Plaintiff's Complaint, ¶¶ 3-6.

Plaintiff, and because the Plaintiff did not allege that the Defendant owed any duty to him, any negligence claim against the Defendant is due to be dismissed.

Assuming, *arguendo*, that the Defendant owed the Plaintiff a duty of some sort, the Defendant did not breach any such duty; indeed, the Plaintiff does not even allege that the Defendant breached a duty to him. Again, assuming, *arguendo*, that the Defendant breached a duty to the Plaintiff, such a hypothetical breach by the Defendant was not the proximate cause of the Plaintiff's injury. As before, there is no allegation by the Plaintiff that a breach of duty on the part of the Defendant was *a* proximate cause – much less *the* proximate cause – of Plaintiff's injury. For these and other reasons, the Plaintiff failed to state a claim of negligence against this Defendant. Accordingly, Barbour County is due to be dismissed as a Defendant.

### B.    The Plaintiff's Allegations Fail to State a Claim for Wantonness.

''Wantonness' is statutorily defined as '[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.' Ala. Code 1975, § 6-11-20(b)(3). 'Wantonness' has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. *Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala. 1994)'.

Hicks v. Dunn, 819 So. 2d 22, 24 (Ala. 2001). Stated differently, "while ordinary negligence involves inadvertence, wantonness requires a showing of a conscious or an intentional act." Id. (citations omitted).

This Brief previously described the Plaintiff's failure to state a claim for negligence. Given that the Plaintiff's allegations are insufficient to state a claim for negligence, such allegations are unquestionably insufficient to make out a claim for wantonness. Part of the reason for this outcome is the fact that "wantonness requires a showing of a conscious or an intentional act." Id. (citations omitted). The Plaintiff fails to state a claim for wantonness because there is no allegation in the Complaint that his injury was a result of a conscious or intentional act on the part of the Defendant.

See Smith v. Bradford, 512 So. 2d 50, 52 (Ala. 1987) ("Wantonness *may* arise [when one has] **knowledge** that persons, though not seen, are likely to be in a position of danger, and with *conscious disregard of known conditions of danger* and in violation of law brings on disaster....") (citations omitted) (emphasis added).  Consequently, any attempt by the Plaintiff to state a claim for wantonness is due to be dismissed.

## V.    THE PLAINTIFF'S EMPLOYER'S LIABILITY ACT CLAIM IS DUE TO BE DISMISSED.

"In order for one to be held liable under the Employer's Liability Act, there must be an employer/employee relationship between the defendant and the plaintiff." Flowers v. Pope, 937 So. 2d 61, 64 (Ala. 2006) (citation omitted).  The decisions of Alabama appellate courts are clear that an inmate, whether state or municipal, cannot be considered an employee of the government entity or agency for whom the inmate performs work.  See Gober v. Ala. Dep't of Corrections, 871 So. 2d 838, 841 (Ala. Civ. App. 2003) ("inmates performing labor during their incarceration are not properly viewed as 'employees' within the scope of the Workers' Compensation Act"); Lanford v. City of Sheffield, 689 So. 2d 176, 179 (Ala. Civ. App. 1997); Downey v. Bituminous Casualty Corp., 349 So. 2d 1153, 1155 (Ala. 1977) (concluding that state prisoner killed while on lease to State Highway Department was not an "employee" of that Department for purposes of Alabama workmen's compensation laws).

The Alabama Legislature has expressly authorized the Department of Corrections "to direct inmates to work at any labor and at any site except as provided otherwise by law." Ala. Code § 14-3-47.  In connection with that directive, the Legislature announced its intent that an inmate or prisoner is not to be considered an "employee" in connection with such work-release activities:

> *No inmate granted privileges under the provisions of this article shall be deemed to be an agent, employee, or involuntary servant of the department, state, or county* while involved in the free community, while under the direction, control, and

16

supervision of the inmate's employer, or while going to and from employment or other specified areas.

Ala. Code § 14-8-40 (emphasis added); see Hicks v. Alabama, 45 F. Supp. 2d 921, 932 n.11 (S.D. Ala. 1998) citing/quoting Ala. Code §§ 14-8-5 and 14-8-40 (1975) ("It is difficult to imagine on what basis the plaintiffs in the case at bar can seek to characterize the inmates at Fountain as agents of the named defendants when Alabama law itself declares that, whenever permitted to drive a state-vehicle, '[n]o inmate ... shall be deemed to be an agent, employee or involuntary servant of the board [of corrections]'.").

Based on the foregoing law, the Plaintiff plainly was not an employee of the Defendant or the DOC at any time material to his Complaint. See Ala. Code § 14-8-40; Gober, 871 So. 2d at 841; Lanford, 689 So. 2d at 179; Downey, 349 So. 2d at 1155. Because he cannot be considered an employee of the Defendant or the DOC, it is not possible for an employer-employee relationship to have existed between the Plaintiff and the Defendant. As a result, the Defendant cannot be liable for an alleged violation of the Employer's Liability Act as a matter of law. See Flowers, 937 So. 2d at 64. Therefore, the Plaintiff's attempt to state a claim for violation of the Employer's Liability Act is due to be dismissed.

## VI.    THE PLAINTIFF INITIATED THIS ACTION IN AN IMPROPER VENUE; THEREFORE, THE DEFENDANT IS ENTITLED TO A TRANSFER OF VENUE.[4]

Venue of an action against an Alabama county is provided for by statute. More precisely,

[t]he venue for all civil actions for damages for personal injury, death, or property damage filed against a county or against a municipality shall be in the county or in the county within which the municipality is located or in the county in which the act or omission complained of occurred.

Ala. Code § 6-3-11.[5]

---

[4] See Defendant's Motion for Transfer of Venue filed contemporaneously with this Memorandum Brief.
[5] The Alabama Supreme Court has declared that the Alabama Rules of Civil Procedure should be disregarded to the extent any provision therein contradicts the express language of § 6-3-11. See Ex parte City of Greensboro, 730 So. 157, 160

17

The Defendant respectfully requests this honorable Court transfer this action to the Circuit Court of Barbour County, Alabama because under § 6-3-11 the Circuit Court of Mobile County is not the proper venue for the Plaintiff's action. "'When ruling on a motion to transfer venue, the trial court must determine whether venue was proper at the time the action was filed'." Ex parte Ambrose, 813 So. 2d 806, 810 (Ala. 2001) (citation omitted). "'If venue is improper at the outset, then upon motion of the defendant, the court must transfer the case to a court where venue is proper." Ex parte Perfection Siding, Inc., 882 So. 2d 307, 309 (Ala. 2003) (citation omitted). Section 6-3-11 was enacted to prevent the inconvenience and disruption that results when a plaintiff attempts to sue a county or municipality in a foreign forum. See Ex parte City of Haleyville, 827 So. 2d 778, 782 (Ala. 2002) (section 6-3-11's "purpose was to prevent a municipality from being sued 'in any and every part of the state'") (citation omitted).

According to the plain language of § 6-3-11, "[t]he venue for all civil actions for damages for personal injury, death, or property damage filed against a county...shall be...in the county in which the act or omission complained of occurred." Ala. Code § 6-3-11. The Plaintiff avers that "[t]he Defendant, Barbour County, was doing business in Barbour County, Alabama, on November 10, 2006." Plaintiff's Complaint, ¶ 2. The Plaintiff further avers that on that date the Plaintiff, "while incarcerated by the State of Alabama, was loaned to Barbour County to clear roads," and that "[w]hile working in a ditch, a co-worker cut a tree which fell onto the Plaintiff, rendering him paraplegic." Plaintiff's Complaint, ¶ 7; see Plaintiff's Complaint, ¶ 12 (alleging that "Defendants negligently and/or wantonly failed to train members of the crew responsible for work being performed by the Plaintiff and crew *in Barbour County*") (emphasis added).

---

(Ala. 1999) ("the venue provision of Rule 82(c) does not apply 'to claims against municipalities, because that rule clearly conflicts with the legislative mandate of § 6-3-11'") (citation omitted).

Because the Plaintiff's Complaint reveals that "the act or omission complained of occurred" in Barbour County, Alabama, it is clear that the Circuit Court of Barbour County – *not* Mobile County – is the proper venue for this action. Ala. Code § 6-3-11; see Ex parte McDonald, 804 So. 2d 204, 207 (Ala. 2001) (holding that, pursuant to Ala. Code § 6-3-11, Marengo County was the proper forum for plaintiff's action against Marengo County); Ex parte Alabama Power Co., 640 So. 2d 921, 924 (Ala.1994); Ex parte Talladega County, 632 So. 2d 473, 474 (Ala. 1994); see also Ex parte Boshell, 805 So. 2d 675, 678 (Ala. 2001) (noting that "[a] transfer of the entire case was not an option in *Kennedy* because under § 6-3-11 Walker County was the only proper venue for the claim against the Walker County Commission").

## CONCLUSION

Based upon the foregoing, Defendant Barbour County, Alabama, requests this Honorable Court to grant its Motion to Dismiss and enter an order dismissing all claims against it in this action.

Respectfully submitted this the 2nd day of November, 2007.

> **s/C. Richard Hill, Jr.**
> C. RICHARD HILL, JR. (HIL045)
> Attorney for Defendant

OF COUNSEL:

WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1772
E-mail:  rhill@webbeley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of November, 2007, I electronically filed the foregoing with the Clerk of the Court using the AlaFile system, which will send notification of such filing to the following: **Bryan G. Duhe', Esquire.**

> **s/C. Richard Hill, Jr.**
> OF COUNSEL

ELECTRONICALLY FILED
11/2/2007 1:03 PM
CV-2007-901225.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## VERIFIED STATEMENT OF MICHAEL TRAVIS BUCKLEY TO BARBOUR COUNTY PURSUANT TO CODE OF ALABAMA §6-5-20, 11-12-5, 11-12-6 AND 11-12-8

I, Michael Travis Buckley, affirm that I was incarcerated by the State of Alabama at Ventress when we were loaned out to Barbour County to clear its roads. On or about November 10, 2006, while under the direct supervision of Barbour County employees, another inmate using a Barbour County chainsaw cut a tree which landed on top of me in a ravine, crushing my back. I am now a paraplegic and live in Mobile County, Alabama where I have applied for treatment. Immediately following the incident, the State of Alabama paid for my medical care and treatment at HealthSouth in Montgomery, Alabama and later Spain Rehab in Birmingham. Since my release from Ventress I have not been able to secure medical care and the State is no longer responsible for the same.

Claim in herewith made for the statutory maximum for the loss of my legs, future medical expenses which are not covered by the State of Alabama and mental anguish for which I am suffering because of my condition.

BY: _____
MICHAEL TRAVIS BUCKLEY

Sworn to and subscribed before me,

this 5th day of March, 2007

_____
NOTARY PUBLIC
My commission expires: 3-8-2009

**EXHIBIT**

**A**

# Exhibit C

ELECTRONICALLY FILED
11/2/2007 1:05 PM
CV-2007-901225.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

MICHAEL TRAVIS BUCKLEY,    )
    )
    Plaintiff,    )
    )
v.    )    CIVIL ACTION NO. : CV-2007-901225
    )
BARBOUR COUNTY, et al.,    )
    )
    Defendants.    )

## MOTION FOR TRANSFER OF VENUE OF
## DEFENDANT BARBOUR COUNTY, ALABAMA

COMES NOW Barbour County, Alabama, a Defendant in the above-styled cause, and moves this Honorable Court for an order transferring venue of this cause, pursuant to Ala. Code § 6-3-11, to the Circuit Court of Barbour County, Alabama. As grounds for the relief requested, Defendant Barbour County, Alabama would respectfully submit unto the Court the following:

    1.    Venue of an action against an Alabama county is provided for by statute.

The venue for all civil actions for damages for personal injury, death, or property damage filed against a county or against a municipality shall be in the county or in the county within which the municipality is located or in the county in which the act or omission complained of occurred.

Ala. Code § 6-3-11.[1]

    2.    The Defendant, an Alabama county, respectfully requests this Honorable Court to transfer this action to the Circuit Court of Barbour County, Alabama, because, under Ala. Code § 6-3-11, the Circuit Court of Mobile County is not the proper venue for the Plaintiff's action. "'When ruling on a motion to transfer venue, the trial court must determine whether venue was

---

[1] The Alabama Supreme Court has declared that the Alabama Rules of Civil Procedure should be disregarded to the extent any provision therein contradicts the express language of § 6-3-11. See Ex parte City of Greensboro, 730 So. 2d 157, 160 (Ala. 1999) ("the venue provision of Rule 82(c) does not apply 'to claims against municipalities, because that rule clearly conflicts with the legislative mandate of § 6-3-11'") (citation omitted).

proper at the time the action was filed'." Ex parte Ambrose, 813 So. 2d 806, 810 (Ala. 2001) (citation omitted). "'If venue is improper at the outset, then upon motion of the defendant, the court must transfer the case to a court where venue is proper." Ex parte Perfection Siding, Inc., 882 So. 2d 307, 309 (Ala. 2003) (citation omitted). Section 6-3-11 was enacted to prevent the inconvenience and disruption that results when a plaintiff attempts to sue a county or municipality in a foreign forum. See Ex parte City of Haleyville, 827 So. 2d 778, 782 (Ala. 2002) (section 6-3-11's "purpose was to prevent a municipality from being sued 'in any and every part of the state'") (citation omitted).

3.      According to the plain language of § 6-3-11, "[t]he venue for all civil actions for damages for personal injury, death, or property damage filed against a county...shall be...in the county in which the act or omission complained of occurred." Ala. Code § 6-3-11. The Plaintiff avers that "[t]he Defendant, Barbour County, was doing business in Barbour County, Alabama on November 10, 2006." Plaintiff's Complaint, ¶ 2. The Plaintiff further avers that on that date the Plaintiff, "while incarcerated by the State of Alabama, was loaned to Barbour County to clear roads," and that "[w]hile working in a ditch, a co-worker cut a tree which fell onto the Plaintiff, rendering him paraplegic." Plaintiff's Complaint, ¶ 7; see Plaintiff's Complaint, ¶ 12 (alleging that "Defendants negligently and/or wantonly failed to train members of the crew responsible for work being performed by the Plaintiff and crew *in Barbour County*") (emphasis added).

4.      Because the Plaintiff's Complaint reveals that "the act or omission complained of occurred" in Barbour County, Alabama, it is clear that the Circuit Court of Barbour County – *not* Mobile County – is the proper venue for this action. Ala. Code § 6-3-11; see Ex parte McDonald, 804 So. 2d 204, 207 (Ala. 2001) (holding that, pursuant to Ala. Code § 6-3-11, Marengo County was the proper forum for plaintiff's action against Marengo County); Ex parte

2

Alabama Power Co., 640 So. 2d 921, 924 (Ala.1994); Ex parte Talladega County, 632 So. 2d 473, 474 (Ala. 1994); see also Ex parte Boshell, 805 So. 2d 675, 678 (Ala. 2001) (noting that "[a] transfer of the entire case was not an option in *Kennedy* because under § 6-3-11 Walker County was the only proper venue for the claim against the Walker County Commission").

WHEREFORE, PREMISES CONSIDERED, Defendant Barbour County, Alabama, moves this Honorable Court for an order transferring venue of this action to the Circuit Court of Barbour County, Alabama, pursuant to Ala. Code § 6-3-11.

Respectfully submitted this the 2nd day of November, 2007.

> **s/C. Richard Hill, Jr.**
> C. RICHARD HILL, JR. (HIL045)
> Attorney for Defendant

OF COUNSEL:

WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama 36124
Telephone: (334) 262-1850
Fax: (334) 262-1889
E-mail: rhill@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 2nd day of November, 2007, I electronically filed the foregoing with the Clerk of the Court using the AlaFile system, which will send notification of such filing to the following: **Bryan G. Duhe, Esquire.**

> **s/C. Richard Hill, Jr.**
> OF COUNSEL

3

# Exhibit D

ELECTRONICALLY FILED
11/13/2007 12:08 PM
CV-2007-901225.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

BUCKLEY MICHAEL TRAVIS                     )
                Plaintiff        )
                                  )
             v.                          )     **Case No.:**  CV-2007-901225.00
                                  )
BARBOUR COUNTY                             )
                Defendant       )

## ORDER

Defendant Barbour County, Alabama's Motion to Dismiss is GRANTED.  This case is hereby
DISMISSED without prejudice, each party to bear its own costs.
DONE this 13th day of November, 2007

                           /s JOSEPH S. JOHNSTON
                           _____

                           CIRCUIT JUDGE

# Exhibit E



**AlaFile E-Notice**

02-CV-2007-901225.00

Judge: JOSEPH S. JOHNSTON

To:  HILL CHARLES RICHARD JR
rhill@webbeley.com

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

MICHAEL TRAVIS BUCKLEY v. BARBOUR COUNTY
02-CV-2007-901225.00

A court action was entered in the above case on 11/13/2007 12:09:04 PM

**D001 BARBOUR COUNTY**

**MOTION FOR CHANGE OF VENUE/TRANSFER**

[Attorney: HILL CHARLES RICHARD JR]

Disposition:     MOOT
Judge:           JSJ

Notice Date:     11/13/2007 12:09:04 PM

**JOJO SCHWARZAUER**
**CIRCUIT COURT CLERK**
MOBILE COUNTY, ALABAMA
205 GOVERNMENT STREET
MOBILE, AL 36644

251-574-8525
jo.schwarzauer@alacourt.gov