## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MICHAEL TRAVIS BUCKLEY     *
                               *

       Plaintiff,            *

                               *    CIVIL ACTION NO.: 2:07-cv-1119-WKW-CSC

vs.                           *

                               *

BARBOUR COUNTY, ALABAMA    *

                               *

       Defendant.          *

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

       COMES NOW the Plaintiff in the above-styled cause and files the following Memorandum in Opposition to Defendant's Motion to Dismiss:

### I.  INTRODUCTION

       Defendant's filing of its Motion to Dismiss is nothing more than a delay tactic designed to prevent the Plaintiff from conducting meaningful discovery that would identify other individual defendants, who are unknown at this time, and whose claims will be time-barred as of November 10, 2008. Defendant's Motion to Dismiss in large part is tantamount to a Rule 56 Motion for Summary Judgment containing factual conclusions with no evidentiary support. Plaintiff respectfully requests the Court to apply the Rule 12(b)(6) pleading standard in making its decision and to avoid the confusion set forth in Defendant's memorandum filed in support of its motion to dismiss. Plaintiff's counsel admit that they are ignorant of most of the relevant facts surrounding this unfortunate event that rendered Plaintiff a quadriplegic while serving prison time relating to a minor drug related offense.

The vast majority of the relevant facts in this case are in the hands of the Defendant, and will be until discovery occurs. Plaintiff's Complaint contains two causes of action: (1) a 42 U.S.C. § 1983 claim for the violation of Plaintiff's rights under the 8th and 14th Amendments to the United States Constitution, and (2) willful negligence, which is allowed under *Ala. Code* § 14-8-40. With the exception of Plaintiff's 14th Amendment claim, it is Plaintiff's position that he has satisfied the liberal notice pleading rules of this Court and that the Defendant's motion to dismiss is due to be denied. Plaintiff concedes that he has no claim under the 14th Amendment.

## II.  LEGAL ARGUMENT

### A.  Standard of Review

In *Hinson v. West*, 2006 WL 1526895(M.D. Ala. 2006), this Court clearly and succinctly sets forth the standard of review applicable to a Rule 12(b)(6) motion to dismiss as follows:

> A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). In evaluating a motion to dismiss, the court will accept as true all well-pleaded factual allegations and reasonable inferences drawn from those facts, and will view them in a light most favorable to the nonmoving party. *Hishon*, 467 U.S. at 73; *see also Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.1992). Ordinarily, the threshold is

"exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir.1985).

However, in cases brought under 42 U.S.C. § 1983 against deputy sheriffs in Alabama, when qualified immunity is an issue, the threshold with respect to pleading is high. *See Marsh v. Butler County*, 268 F.3d 1014 (11th Cir.2001), *implicitly modified by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir.1998) ("A district court may not infer claims other than those that plainly appear on the face of the complaint to defeat a defense of qualified immunity.").

*Hinton*, 2006 WL 1526895 at *2. The qualified immunity defense is available when a governmental official is sued in his individual capacity. *See, Smith v. Allen*, 502 F.3d 1255,1271(11th Cir. 2007). In this case, Defendant asserts no defense of qualified immunity because no individual defendant has been named as a party. As such, Plaintiff's pleading threshold is "exceedingly low" to survive Defendant's motion to dismiss.

### B. Plaintiff has Stated a Cause of Action as to its State Law Claim of Willful Negligence.

Plaintiff will first address Defendant's argument beginning on page 18 of its memorandum wherein Defendant argues that Plaintiff has failed to satisfy the minimum pleadings requirements of Rule 8, *A.R.C.P.* in pleading his state law claim for willful negligence. The Defendant first incorrectly argues that Plaintiff's Complaint contains only legal conclusions with no supporting allegations of fact and is due to be dismissed. This fact is simply not true. Defendant continues on page 19 of its brief where it relies upon three

Alabama appellate cases decided in 1972, 1960 and 1943 to support its argument regarding the pleading standards of Rule 8, *A.R.C.P.* Interestingly, the *Alabama Rules of Civil Procedure* were not adopted until 1973, after every common-law pleading case cited by the Defendant was decided. Defendant is simply citing improper authority.

Rule 8 of the *A.R.C.P.*, like the Federal Rule, provides for notice pleading, which replaced the technical form of pleading under common-law. *See, Prince Funiture Company v. Stanfield, 386* So.2d 1163, 1164(Ala. Civ. App.1980). "The function of notice pleading [is] to allow plaintiffs and defendants to open the door to developing their cases on the merits." *Fraternal Order of Police, Strawberry Lodge # 40 v. Entrekin*, 294 Ala. 201, 314 So.2d 663, 673 (1975). "The complaint . . .need not state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the action is provided." *Id.* at 672. "To comply with the requirements of Rule 8 in stating a claim for relief, the claim for relief must give the opposing party fair notice of the pleading and the grounds upon which it rests." *Smith v. Smith*, 865 So.2d 1221, 1224 (Ala. Civ. App. 2003). More importantly, "the pleading of legal conclusions is not prohibited, as long as the requisite of fair notice is provided thereby to the opponent." *Mitchell v. Mitchell*, 506 So.2d 1009, 1010(Ala. Civ. App. 1987).

While Plaintiff may ultimately not be able to sustain his burden of proving a claim for willful negligence against Barbour County, Plaintiff has adequately plead a claim of willful negligence against Barbour County giving it fair notice of the claim. Based on the foregoing,

Defendant's Motion to Dismiss is due to be denied.

**1. Plaintiff has stated a valid claim for willful negligence against Barbour County.**

Defendant begins on page 20 of its brief and continues through page 22 to apparently argue that Barbour County owed no duty to the Plaintiff while he worked to maintain Barbour County's roads. Defendant cites no Alabama case holding that it owed no duty to the Plaintiff, but instead analogizes failure to supervise employment cases, unsafe work place cases and contributory negligence cases, even though the issue of contributory negligence is generally one for the jury to resolve. *See*, *Ridgeway v. CSX Transportation*, 723 So.2d 600 (Ala. 1996). Defendant's motion to dismiss is due to be denied because it has not demonstrated to the Court that there exists no set of circumstances by which Plaintiff is prohibited from recovering under his willful negligence claim.

The Alabama Legislature envisioned that a willful negligence claim can exist against a county by an inmate working outside the jail or correctional facility when it enacted *Ala. Code* § 14-8-40 (1975), which provides as follows:

> **Any inmate** participating in a work release program authorized by this chapter or **otherwise working outside the jail or a correctional facility** shall have no cause of action against the county or a community correction agency, or an employee thereof, related to such activities, unless the county or community corrections agency or employee thereof is wilfully negligent in carrying out their responsibilities. (Acts 1976, No. 637, p. 883, § 11; Act 2002-497, p. 1287, § 1.)

*Id.* (Emphasis added). Contrary to Defendant's statement to the Court, this statute does not

only apply to work-release inmates.

The issue of whether a duty was owed to the Plaintiff by Barbour County will ultimately be decided by the Court based on the facts and circumstances surrounding Plaintiff's injury, which at this point are largely unknown by the Plaintiff because of the severity of his injury. In addition, *Ala. Code* § 14-4-6 (1975) prescribes rules and regulations by which the County must abide when using convicts to maintain its public roads. It is also expected that Barbour County has its own rules and regulations relating to convict work on county roads. Plaintiff, however, does not have access to these rules because it has yet to conduct discovery.

Finally, the facts and circumstances of the accident may be such that Barbour County owed a duty to the Plaintiff based simply on the proximity of its employees to the incident and the callous nature of the conduct, all of which is unknown to the Plaintiff without conducting discovery into the incident. It is simply premature for Barbour County to conclusively state at this point that it owed absolutely no duty to the Plaintiff and that the Plaintiff has failed to state a claim for willful negligence. Based on the foregoing, Defendant's motion to dismiss is due to be denied.

**2. Section 14-8-40, *Ala. Code* 1975, does allow a private cause of action.**

Defendant argues beginning on page 22 of its brief that *Ala. Code* § 14-8-40 only applies to an inmate engaged in a work-release program. Plaintiff has not alleged that he was engaged in a work-release program because he was not. The statute, however, clearly

applies to all inmates working outside of a jail or correctional facility and not just to work-release inmates. Defendant is simply misconstruing the statute for its own benefit.

Defendant finally argues on page 23 of its brief that Plaintiff "failed to allege any conduct on the part of Barbour County that, if true, could conceivably constitute 'willful negligence.'" Once again, as previously set forth by Plaintiff herein, Rule 8, *A.R.C.P.*, does not require that all elements or facts of Plaintiff's claim be pled in the Complaint; fair notice must simply be given to the Defendant as to the claims being asserted against it. While Plaintiff may not ultimately prevail on this claim, it has given Barbour County notice that it was willfully negligent on November 10, 2006 when Plaintiff was severely injured by a falling tree while maintaining Barbour County's public roads. As such, Defendant's motion to dismiss is due to be denied.

**C. Barbour County is Not entitled to Sovereign Immunity**.

Barbour County asserts beginning on page 3 of its memorandum that it is entitled to sovereign immunity under Section 14 of the Alabama State Constitution because at the time of the Plaintiff's injury Barbour County was acting as an agent of the State. Barbour County also alleges that because it was acting as an agent of the State it is entitled not only to sovereign immunity but also immunity under the 11th Amendment to the United States Constitution barring suits in Federal Court when the State is being sued there. In support of these two immunity assertions, the Defendant offers primarily three cases: *Ex parte Tuscaloosa County*, 796 So.2d 1100, 1103 (Ala. 2000); *Rutledge v. Baldwin County*

*Commission*, 495 So.2d 49, 53 (Ala. 1986); and finally *Town of Loxley v. Coleman*, 720 So.2d 907, 908, 909 (Ala. 1998).

A closer review of these decisions do not support Barbour County's contention that at the time the Plaintiff was crushed, Barbour County was acting as an agent of the State. Specifically in *Rutledge*, *supra*, the Court determined that Baldwin County was acting as an agent for the Department of Public Safety when it collected and transmitted applications and fees for the issuance of original Alabama driver's licenses. The Court held that this function was specified by state statute and was carried out in accordance with procedures promulgated by the State of Alabama Department of Public Safety. In *Ex Parte Tuscaloosa*, *supra*, the Alabama Supreme Court held that Tuscaloosa County was immune from suit and afforded sovereign immunity when it hired a license inspector whose sole purpose was collecting and enforcing state business license taxes. The license inspector hired by the county was hired by statute and was retained to enforce the State's business license laws.

Finally, Barbour County cites the Alabama Supreme Court decision in *Town of Loxley*, *supra*, as authority for its position that at the time of the Plaintiff's injury Barbour County was acting as agent for the State of Alabama. Specifically in the *Town of Loxley*, a state inmate was injured while being transported by the municipality from state prison to a work release job at the town. The Court held that the town was in fact acting as an arm of the Department of Corrections when it transported a state inmate from an institution to a job.

The facts and circumstances in the foregoing cases bear no resemblance to the facts

pled in Plaintiff's Complaint, i.e., that Barbour County used a use state inmate to work on a county road. Barbour County asks the Court to perform legal gymnastics in order to find that Barbour County became an agent for the state simply by exercising control over the Plaintiff. The Defendant's brief at page 5 states as follows:

> And, it is clear from the face of the Complaint that Barbour County exercised that control over the Plaintiff. Accordingly, an agency relationship existed between Barbour County and the Department of Corrections.

The Defendant has offered no case law demonstrating that Barbour County at the time of the Plaintiff's injury was acting for the Department of Corrections by exercising control over the Plaintiff when performing a county function. Quite to the contrary, there can be no dispute that at the time of his injury the Plaintiff was acting as an agent for Barbour County, under Barbour County supervision, cleaning Barbour County roadways through a lease agreement with the State of Alabama Department of Corrections. All work performed by the Plaintiff benefitted Barbour County and Barbour County alone at the time of his injury. At the time of his injury, Plaintiff was under the exclusive control of Barbour County, who was in no way acting as an agent of the state.

Alabama law defines an agent as:

> A person who, by agreement with another called the principal, acts for the principal and is subject to its control. The agreement may be oral or written or implied from the conduct of the parties and may be with or without compensation.

*Merrill v. Joe Bullard Oldsmobile, Inc.*, 529 So.2d 943 (Ala. 1988); *Davidson v. Mobile*

Page 9 of 16

*Infirmary*, 456 So.2d 14 (Ala. 1984). It is alleged in the Complaint that at the time of his injury the Plaintiff was working for Barbour County. Plaintiff has not alleged and Barbour County has failed to show that the State had any involvement whatsoever with the Plaintiff after custody was transferred to Barbour County. Barbour County has failed to show that the activity of the Plaintiff at the time of his injury benefitted the State in any way or that Barbour County was acting for or controlled by the state when performing work on Barbour County's roads. As such, sovereign immunity does not apply to Barbour County.

Defendant also not only misconstrues the doctrine of respondeat superior under Alabama law, but also misconstrues the State's long held "loaned servant" doctrine. Specifically the loaned-servant doctrine provides:

> When one person puts his servant at the disposal of another for the performance of a particular service for the latter, the servant, in respect of his acts in that service, is to be dealt with as the servant of the latter *and not of the former*. This rule is elementary and finds support in a large number of decisions..

*Ware v. Timmons*, 954 So.2d 545 (Ala. 2006) and *Denton v. Yazoo & Mississippi Valley R.R.*, 284 U.S. 305, 308, 52 S.Ct. 141, 76 L.Ed. 310 (1932).

At the time the Plaintiff was crushed by a felled tree cut down by another inmate, both were loaned either by contract or oral agreement from the state to Barbour County to clean and/or maintain Barbour County roadways. There is also no dispute that at the time of the Plaintiff's injury he was crushed by a fellow servant loaned to Barbour County, under the complete control of Barbour County. Barbour County has not disputed and, in fact, agrees

with the Plaintiff's Complaint in stating that at the time that Mr. Buckley was crushed he was

acting as agent of Barbour County as a borrowed servant. As a borrowed servant, Barbour

County bears responsibility for the Plaintiff's well being and ensuring that other servants

borrowed by Barbour County don't negligently or wantonly injure another. *Citing, Towner*

*v. Hosea O. Weaver & Sons*, 614 So.2d 1020 (Ala. 2003). Obviously here one servant

borrowed by Barbour County injured another borrowed servant, and under Alabama law

Barbour County bears responsibility.

Barbour County next asserts that it is entitled to sovereign immunity under the 11th

Amendment to the United States Constitution and again makes a misplaced argument that

Barbour County was acting as an arm of the State and as such should be protected under the

same blanket of sovereign immunity provided the State when it is sued in Federal Court. In

*Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (En Banc) the Court held as follows:

> Whether a defendant is an "arm of the State"must be assessed in
> light of the particular function in which the defendant was
> engaged when taking the actions out of which liability is
> asserted to arise. *See Shands Teaching Hosp. & Clinics v. Beech
> St. Corp.,* 208 F.3d 1308, 1311 (11th Cir.2000) ("The pertinent
> inquiry is not into the nature of [an entity's] status in the
> abstract, but its function or role in a particular context.")

*Id*. at 1308. The Court went on to hold that there are no words to determine whether an

entity is an "arm of the State" qualifying it for immunity under the 11th Amendment. Four

factors must be considered when ascertaining whether or not an entity may properly be

provided 11th Amendment protection. The factors to be considered are as follows:

(1) how state law defines the entity; (2) what degree of control

the state maintains over the entity; (3) where the entity derives
its funds; and (4) who is responsible for judgments against the
entity.

*Manders*, 338 F.3d at 1309, citing, *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic*

*Comm.*, 226 F.3d 1226, 1231-34 (11th Cir. 2000); *Shands,* 208 F.3d at 1311; *Tuveson v. Fla.*

*Governor's Council of Indian Affairs, Inc.,* 734 F.2d 730, 732 (11th Cir.1984).

At the time that the Plaintiff was crushed, his particular function was cleaning

Barbour County roadways at the direction and control of Barbour County.  At the time that

Barbour contracted to borrow the Plaintiff from the State prison system his particular job

functions were designed to benefit Barbour County alone . As stated in *Manders*, the entity's

status must be taken out of the abstract and its function and/or role must be placed within the

context of reality.   Specifically Barbour County was not acting for the State when it

contracted with the Alabama Department of Corrections to utilize and/or borrow Buckley to

clean county roadways. Quite the contrary.  The State provided to Barbour County needed

manpower and the sole beneficiary was Barbour County.

With reference to the first two factors outlined in *Manders*, Barbour County is defined

under *Ala. Code (1975)* §11-1-1 and §11-2-2 as "a body corporate" with power to sue or be

sued in any court of record.  Barbour County maintains autonomy and jurisdiction over land

and navigable water within its boundaries. *See, Ala. Code (1975)* §11-1-3.  When assessing

the first two factors described in *Manders,* this Court must hold that Barbour County is "a

body corporate" autonomous from the State of Alabama, which can and does on an equal

basis contract with the State for various supplies and services. In this case, Barbour County contracted with the State of Alabama for the use of State inmates to perform debris removal and/or maintenance of a county roadway when the Plaintiff was crushed.

As for the final two *Manders* factors, the County derives funds from its own tax base. All counties, including Barbour, under Alabama law are responsible for the payment of costs, the defense of lawsuits and the payment of judgments rendered against them. See *Ala. Code (1975)* §11-1-9.

This Court must hold in following *Manders* that Barbour County has failed to prove that any of the four factors in *Manders* have been met. In fact, the four factors in *Manders* clearly establish that Barbour County is not entitled to 11th Amendment protection.

### D. The Plaintiff's Complaint States a Claim for Deliberate Indifference.

Defendant argues beginning on page 12 of its brief that Plaintiff's Complaint fails to state a claim against Barbour County for deliberate indifference. Plaintiff, in fact, alleges in paragraph 6 of its Complaint that "[a]s a result of Barbour County's deliberate indifference to the substantial risk of serious harm to Plaintiff, the Plaintiff was rendered a paraplegic as a result of the injuries that he received." Under the liberal pleading requirement of Rule 8, Plaintiff has properly stated a claim under 42 U.S.C. § 1983 for violation of his Eighth Amendment rights.

Plaintiff does not disagree with the case law set forth in Defendant's brief stating that

gross negligence is insufficient to prove an Eight Amendment violation. Plaintiff, however, does not allege that Defendant was grossly negligent. The point of Defendant's argument is apparently that Plaintiff has failed to plead what it deems are sufficient facts that would prove an Eighth Amendment violation. While Plaintiff does not agree with Defendant's unsupported argument regarding the pleading requirements for a § 1983 claim under the Eighth Amendment, Plaintiff's counsels' knowledge of the facts surrounding the incident is admittedly hampered by the fact that the severity of Plaintiff's injuries prevents him from remembering many of the surrounding facts. Plaintiff's counsel is unable to talk to witnesses because the identity of the witnesses will remain unknown until discovery is conducted. Unfortunately, most of the knowledge regarding the facts surrounding Plaintiff's injuries are in the hands of the Defendant and will remain there until some preliminary discovery is conducted.

The purpose of the liberal pleading rules is to give the Defendant fair notice of the claim. Plaintiff has done that. It would be grossly unfair to the Plaintiff to allow the Defendant to use the Court's liberal pleading rule as a hammer to prevent the Plaintiff from conducting meaningful discovery regarding the facts and circumstances surrounding his injury. Such is not the purpose of the Alabama or Federal Rules of Civil Procedure.

### III. CONCLUSION

Based on the foregoing, Plaintiff has adequately stated a claim and Defendant's motion is due to be denied. In the event, the Court determines that he Plaintiff has failed to

pled sufficient facts in his Complaint, Plaintiff respectfully requests that he be allowed to amend his Complaint.

Respectfully Submitted,

McFADDEN, LYON & ROUSE, L.LC.

Attorneys for Plaintiff


/s/THOMAS H. BENTON(BENTT7091)

McFadden, Lyon & Rouse, L.L.C.

718 Downtowner Boulevard

Mobile, Alabama 36609

Telephone: (251) 342-9172

Facsimile:  (251) 342-9457

E-mail:    tbenton@mlrlawyers.com


/s/Bryan Duhe (DUHEB6339)

Attorney for Plaintiff

2500 Dauphin Street

Mobile, Alabama 36606

Telephone: (251) 479-6500

Facsimile:  (251) 479-3575

E-mail:  bryanduhe@aol.com


## CERTIFICATE OF SERVICE

I hereby certify that on this the 19th day of February, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

C. Richard Hill, Jr.,Esq.

Joseph L. Hubbard, Jr., Esq.
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama 36124

/s/THOMAS H. BENTON, JR.