IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL TRAVIS BUCKLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-CV-1119-WKW |
| | ) | |
| BARBOUR COUNTY, ALABAMA, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are two motions to dismiss Plaintiff Michael Travis Buckley's ("Buckley") amended complaint (Doc. # 32), one filed by Defendant Barbour County, Alabama ("County") (Doc. # 35) with an accompanying brief (Doc. # 36), and the other, by Defendant George Gamble ("Gamble") (Doc. # 37) with an accompanying brief (Doc. # 38). Buckley filed a brief in opposition (Doc. # 44) to the County's motion, and a brief in opposition (Doc. # 43) to Gamble's motion. Both Gamble and the County filed replies (Docs. # 45 & 46 respectively). For the following reasons, the County's motion to dismiss (Doc. # 35) is due to be granted in part and denied in part, and Gamble's motion to dismiss (Doc. # 37) is due to be denied.

**I. JURISDICTION AND VENUE**

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for all claims arising under federal law. The court also has original jurisdiction over claims based

upon violations of civil rights.  *See* 28 U.S.C. § 1343.  The parties do not contest personal jurisdiction or venue, and the court finds that there are allegations sufficient to support both.

## II.  FACTS AND PROCEDURAL HISTORY

On November 10, 2006, Buckley, an inmate in one of the County's correctional facilities, was severely injured while working as part of a Community Work Squad performing right of way clearing work for the County.[1]  (Am. Compl. ¶¶ 4, 8, 10.)  Under Alabama law, counties may use inmates to perform repair, maintenance, and clean-up work for county roads.  (Am. Compl. ¶ 4); *see* Ala. Code § 14-8-36.  The Alabama Department of Corrections' Administration Regulation 320 ("Regulation 320")[2] establishes "responsibilities, policies, and procedures for the safety of inmate workers performing tasks near a roadway," Regulation 320 I.  (Am. Compl. ¶ 5.)  Regulation 320 requires counties using inmates for road work to train them on equipment operations safety.  (Am. Compl. ¶¶ 5-6); Regulation 320 IV B. ¶ 4.

On the day of his injury, Buckley and another inmate, Ricky Barrett ("Barrett"), were working as part of a Community Work Squad "performing right of way clearing work" for the County under the supervision of Gamble, the work-crew supervisor (Gamble's Br. in Supp. 2).  (Am. Compl. ¶ 8.)  Barrett had used a gasoline-powered chainsaw to cut down a large oak tree leaning toward the county road.  (Am. Compl. ¶ 8.)  The tree fell onto the side

---

[1] The factual allegations are assumed in favor of the nonmovant.  *See infra* p. 5.

[2] Alabama Department of Corrections, Administrative Regulations, http://www.doc.state.al.us/docs/AdminRegs/AR320.pdf (last visited December 11, 2008).

of a ditch between the embankment and the road, and into the road, partially blocking traffic. (Am. Compl. ¶ 8.)  The oak tree's position across the ditch "constituted an extreme danger to the life and health of anyone working in the vicinity of the oak tree" and Gamble "was aware of this danger." (Am. Compl. ¶ 8.)  Gamble then instructed Barrett and Buckley to use a chainsaw to trim the tree so that it could be removed.  (Am. Compl. ¶ 9.)  Neither inmate had received safety training in the use of chainsaws.  (Am. Compl. ¶ 9.)  Buckley told Gamble that he did not feel he was qualified to use the chainsaw to cut the tree and feared for his safety because the tree "was precariously resting on the edge of a large ditch." (Am. Compl. ¶ 9.)  Gamble ordered Buckley to use the chainsaw anyway, and Buckley complied because he otherwise faced a written reprimand that would affect his parole eligibility.  (Am. Compl. ¶ 9.)

While Buckley and Barrett were trimming the tree, Buckley, who was in the ditch, noticed that the limb Barrett was cutting was supporting the weight of the tree and preventing it from falling into the ditch.  (Am. Compl. ¶ 9.)  "As [Buckley] quickly moved to avoid the immediate danger that he perceived, the tree fell and rolled into the ditch on top of him." (Am. Compl. ¶ 10.)  Buckley's injuries were devastating – he suffered a broken back and is now a paraplegic for life.  (Am. Compl. ¶ 10.)

It is Buckley's contention that the County was aware of Regulation 320's requirement to train inmates on equipment operations safety, but that the County's "practice and custom of intentionally disregarding the requirements of Regulation 320 was so pervasive as to be

the functional equivalent of a policy that was finally adopted by [the County]." (Am. Compl. ¶ 11.)  The failure to train inmates, Buckley claims, "amounted to deliberate indifference which resulted in [his] injury."  (Am. Compl. ¶ 11.)

Buckley sued the County and Gamble on December 26, 2007 (Compl. (Doc. # 1)), but has since amended his complaint.  His federal claim, asserted against both Defendants, is under 42 U.S.C. § 1983 for violations of his rights under the Eighth and Fourteenth Amendments of the United States Constitution.  (Am. Compl. ¶¶ 13-15.)  He alleges that Defendants violated his rights "through their deliberate indifference to the substantial risk of harm to [Buckley], which is tantamount to cruel and unusual punishment and deprivation of [Buckley's] right to due process."  (Am. Compl. ¶ 13.)  Buckley also filed two state-law claims for violations of Alabama Code § 14-8-40, one against Gamble for willful negligence in demanding that Buckley trim the tree, and the other against the County for willful negligence in (1) "intentionally failing to adhere" to Regulation 320's requirements, and (2) under the doctrine of *respondeat superior* for Gamble's willful acts.  (Am. Compl. ¶¶ 15-20.)  Buckley alleges damages that include, though are not limited to, "permanent physical impairment, past and future medical and life-care expenses, physical pain and suffering, mental anguish that he will endure for the remainder of his life, and future lost wages."  (Am. Comp. ¶ 12.)

### III.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure raises the defense of failure to state a claim upon which relief can be granted.  A 12(b)(6) motion tests the sufficiency of the complaint against the pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure.  To state a sufficient claim for relief under Rule 8(a)(2), only "a short and plain statement . . . showing that the pleader is entitled to relief" is required. Fed. R. Civ. P. 8.  A sufficient claim nevertheless "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations and footnote omitted).

In ruling on a motion to dismiss, however, courts should construe the pleadings "broadly," and view the allegations in the complaint "in the light most favorable to the [nonmovant]." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (internal quotation marks omitted).  If there is "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim, there is a "plausible" ground for recovery, and a motion to dismiss should be denied. *Twombly*, 127 S. Ct. at 1965.  The claim can proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal quotation marks omitted).

# IV.  DISCUSSION

## I.  Buckley's Federal Claims

### A.  The County's Motion to Dismiss Buckley's § 1983 Claim

The County presents four arguments for dismissing the § 1983 claim for Eighth Amendment violations.[3]  The County argues first that Buckley has failed to allege an unconstitutional policy or custom, an element of liability for local government bodies under § 1983.[4]  (County's Br. in Supp. 6.)  It argues second that Buckley has failed to allege the County was a "'moving force' behind his injury."  (County's Br. in Supp. 8.)  It argues third that the County cannot be held liable under a theory of *respondeat superior*,[5] and finally, it argues fourth that Buckley has only alleged willful negligence, and that willful negligence is not sufficient to support a claim requiring deliberate indifference.  (County's Br. in Supp. 10, 11.)

Section 1983 prohibits persons acting under color of state law from depriving individuals of the "rights, privileges, or immunities" secured by the Constitution and federal

---

[3] Buckley has agreed to drop his § 1983 claim for violations of the Fourteenth Amendment.  (*See* Resp. to County 2; Resp. to Gamble 6.)

[4] Heightened pleading requirements do not apply to § 1983 claims against municipalities. *Leatherman v. Tarrant County Narcotics & Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993).

[5] Buckley has conceded that the County cannot be held liable for § 1983 violations under a theory of *respondeat superior*.  (Resp. to County 4.)  The court therefore will not address the County's third argument.

law.  Counties are "persons" within the meaning of § 1983,[6] but for counties to be liable under § 1983, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the [county] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."[7]  *McDowell*, 392 F.3d at 1289.  The County argues Buckley has failed to allege an unconstitutional policy or custom because the "practice and custom" his allegations describe – a failure to train the inmates on equipment – are disconnected from his injury.  (County Br. in Supp. 7.) According to the County, it was Buckley's failure to move away from the falling tree that caused his injury.  (County Br. in Supp. 7.)  In the County's view, the claim must therefore allege – and it has not – that the County had a duty, which it breached, to train him to avoid falling trees.

The County's claim that Buckley's failure to move quickly enough accounts for his injury is merely a veiled assertion of contributory negligence, an assertion that requires more developed facts to prevail.  Additionally, Buckley's allegation that he moved does not

---

[6] "[T]he Supreme Court [has] held that counties (and other local government entities) are 'persons' within the scope of § 1983, and subject to liability . . . ."  *McDowell v. Brown*, 392 F.3d 183, 1289 (11th Cir. 2004); *accord Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Any future discussion of or quotation referring to "municipal" liability addresses liability for counties as well.

[7] Policies are the result of decisions by a duly constituted legislative body or officials whose acts can fairly be characterized as those of that body.  *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997).  Customs are not formally approved by an appropriate decisionmaker but liability attaches "on the theory that the relevant practice is so widespread as to have the force of law."  *Id.* at 404. "Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the county has a custom or practice of permitting it and that the county's custom or practice is 'the moving force [behind] the constitutional violation.'"  *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003) (en banc) (one set of internal quotation marks omitted) (alteration in original) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 398 (1989)).

7

preclude alleging that other antecedent forces caused his injury. Buckley alleged that he and Barrett were untrained in equipment operations safety and were ordered to cut a tree in such a way that critically injured Buckley. If true, that allegation sufficiently supports finding a causal connection between the County's practice or custom of failing to train inmates in equipment operations safety, and the cause of Buckley's injury. Buckley is not required to allege a practice or custom of failing to train inmates to avoid falling trees or to train inmates "in the use of common sense." (County Br. in Supp. 7.)

The County also faults the amended complaint for failing to allege "other incidents that would have put [the County] on notice that its purported policy of not training [Buckley] and other inmates . . . was unconstitutional." (County Br. in Supp. 8.) Because the failure-to-train-inmates policy is not unconstitutional on its face, the County argues, the amended complaint must allege more than one incident of a failure to train. (County Br. in Supp. 7-8.) In fact, Buckley has raised more than one incident of a failure to train – he alleges that both he and Barrett had not been trained. But even if a policy or custom which is not unconstitutional on its face requires "'considerably more proof than the single incident'" to infer a policy or custom (County Br. in Supp. 8 (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985)), the County's argument is more appropriate at the summary judgment stage. The allegations blaming the County's wider practice or custom to forego training, thus, amount to more than speculation, and the § 1983 claim against the County will survive a motion to dismiss.

8

The County's second argument – that Buckley has failed to allege the County was a moving force behind the violation – fails for related reasons.  The County is correct that Buckley "must demonstrate a direct causal link between the [County's] action and the alleged injury." (County Br. in Supp. 9 (citing *Brown*, 520 U.S. at 404).)  Despite the allegations, however, the County errantly misrepresents Buckley's "own failure to avoid a falling tree that he knew would roll on top of him once it was cut" as the alleged cause of his injury. (County Br. in Supp. 9).  From this faulty premise, the County argues that training in equipment operations safety would not have prevented Buckley "from ignoring his common sense" (County Br. in Supp. 9).[8]  But as already explained above, *see supra* p. 8, it is plausible that the lack of training was a proximate cause of Buckley's injury.

The County's remaining contested challenge is that Buckley alleges only willful negligence and that willful negligence cannot satisfy the deliberate indifference standard for proving an underlying Eighth Amendment violation.  The County argues that because Buckley "has fail[ed] to allege conduct on behalf of [the County] that amounts to more than gross negligence," Buckley's claim must fail.  (County Br. in Supp. 14.)  The County's argument assumes, however, that just because Buckley alleges willful negligence for his state-law claims, he cannot allege deliberate indifference for his federal claim.  Buckley can plead in the alternative of course.  Furthermore, Buckley is not required to plead more than

---

[8] Indeed, if common sense is the operative issue, it strains common sense to argue that a person who perceives that an oak tree is about to crush him would intentionally take the blow instead of moving out of the way.  "If arguments had feelings, this one would be embarrassed to be here." *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1308 (11th Cir.), *cert. denied*, 128 S. Ct. 499 (2007).

what is necessary for his state-law claim.  If willful negligence is all that is required for the state-law claim, Buckley is not required to plead a mental state of higher culpability to ensure symmetry with an Eighth Amendment claim.

To prove a violation of the Eighth Amendment's prohibition of "cruel and unusual punishments" in prison condition cases, two requirements must be met.  First, the constitutional deprivation must have been "objectively, 'sufficiently serious.'"  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must have had a "'sufficiently culpable state of mind,'" – which the Court has held to be a "'deliberate indifference' to inmate health or safety."  *Id.* (quoting *Wilson*, 501 U.S. at 302-03).  Deliberate indifference is equivalent to "recklessness" as it is used in criminal law, "when a person disregards a risk of harm of which he is aware."  *Id.* at 836-37.  Thus, for there to be "deliberate indifference," the liable party must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must have drawn that inference.  *Id.* at 837; *see also Cottone v. Jenne*, 326 F.3d 1352, 1356 n.4, 1358 (11th Cir. 2003).  "Deliberate indifference," therefore, is a subjective standard.  *E.g.*, *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (explaining that an Eighth Amendment claim for the conditions of confinement has an objective component (a sufficiently serious condition) and subjective component (deliberate indifference)).

*Farmer* defined "deliberate indifference," however, as the state of mind for a prison official, not a government entity. *See Farmer*, 511 U.S. at 837. And the standard in *Farmer* is not the same as the *objective* standard for the deliberate indifference of a governmental body facing liability under § 1983 when it fails to train employees who commit constitutional torts. *Id.* at 841.[9] For one, § 1983 imposes no state-of-mind requirement. *Id.* But additionally, "considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity as distinct from that of a governmental official." *Id.* Thus, *Farmer* at least undermines the appropriateness of applying a subjective standard to deliberate indifference in Eighth Amendment claims when a governmental body, and not an individual, is alleged to have committed the violation.

Even assuming *arguendo*, however, that a subjective standard for deliberate indifference applies to governmental bodies in prison-condition cases, Buckley's allegations satisfy that standard: The County both was aware of facts from which a substantial risk could be inferred and drew that inference. Allowing inmates to use equipment such as chainsaws without training in equipment operation safety raises a substantial risk. And because it must be taken as true that the County intentionally failed to train its inmates, the County was aware of facts from which substantial risk could be inferred. That is true regardless of whether the

---

[9] This case presents the unusual claim that the County failed to train inmates, rather than failed to train employees, who, allegedly because of a failure to train, committed constitutional violations, *see City of Canton*, 489 U.S. at 387. Thus, this case is not exactly like those employing the subjective standard for Eighth Amendment claims or the objective standard for § 1983 claims. The County is obviously not a prison official (as in the former) and the standard for deliberate indifference at issue is the standard for establishing an Eighth Amendment violation, not for establishing liability for failing to train employees (as in the latter).

11

County was aware of the particular risk of the tree. (*See* County Reply 7.) Buckley's allegations satisfy the first requirement of "deliberate indifference" – showing awareness.

Buckley's allegations also satisfy the second requirement – drawing the inference of a substantial risk. Whether a party had requisite knowledge of a substantial risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (citation omitted). The risk to inmates from failure to train in this case was obvious. Inmates were using equipment such as chainsaws to clean up roads and were doing so without safety training. The obvious nature of this risk permits the inference that the County knew inmates faced a substantial risk.[10] Buckley has alleged sufficient facts for the § 1983 claim against the County to go forward.

He cannot receive, however, punitive damages from the County. Counties are immune from punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *e.g.*, *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1322 (11th Cir. 2000). Buckley's request for punitive damages (Am. Compl. 5), therefore, is due to be dismissed.[11] (*See* County Br. in Supp. 24-25.)

---

[10] The County avers that "[c]utting up a fallen tree with a chainsaw is not, as [Buckley] suggests, an inherently dangerous activity." (County Reply 6 n.6.) The court disagrees.

[11] The County also argues that it is immune from punitive damages under state law. (County Br. in Supp. 25.) Buckley, however, is not requesting punitive damages against the County for his state-law claim. (*See* Am. Compl. 6.)

12

**B.      Gamble's Motion to Dismiss Buckley's § 1983 Claim**

Gamble raises the defense of qualified immunity in response to Buckley's § 1983 claim.[12]   Gamble argues first that Buckley has failed to meet the heightened pleading requirement triggered by a qualified immunity defense.  (Gamble Br. in Supp. 6-8.)   He argues second that he is entitled to qualified immunity because Buckley has not alleged "deliberate indifference," that the claim otherwise fails to allege supervisory liability, and that in any case, Gamble was not on notice that his conduct would violate "clearly established" federal rights.  (Gamble Br. in Supp. 8-18.)

"Qualified immunity protects government actors performing discretionary functions from being sued in their individual capacities[,] . . . to the extent that 'their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'"  *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) (citations omitted) (second omission in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982)). An official asserting qualified immunity must establish that he was acting within the scope of his discretionary authority.  *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136 (11th Cir. 2007).  If the official establishes that his authority was discretionary, "the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity."  *Id.* at 1137.  An official is not entitled to qualified immunity if (1) the official's conduct violated a constitutional or statutory right; and (2) the violation was "'clearly established.'"  *Id.*

---

[12] In part because Gamble raised the qualified immunity defense on the § 1983 claims, a motion to stay discovery in this case was granted.  (Doc. # 42.)

(quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (adding that "[a]lthough the first and second inquiries are 'logically related, the two inquiries must be conducted in the proper order'" so that a court "'may not assume an answer to the first question in order to avoid difficult constitutional issues'" (quoting *McClish v. Nugent*, 483 F.3d 1231, 1238 (11th 2007))).

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable officer would understand what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The "salient" question is whether the officials had "fair warning" that their conduct is unconstitutional. *See id.* at 741. The Eleventh Circuit "recognize[s] three sources of law that would put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." *Goebert v. Lee County*, 510 F.3d 1312, 1330 (11th Cir. 2007) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1351-52 (11th Cir. 2002)). It is the Eleventh Circuit's view that "most judicial precedents are tied to particularized facts and fall into [the third] category" of permissible sources for a determination of clearly established law. *Vinyard*, 311 F.3d at 1351-52. General statements of law, however, "are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even

though 'the very action in question has [not] previously been held unlawful.'" *Hope*, 536

U.S. at 741 (alteration in original) (quoting *Anderson*, 483 U.S. at 640) (quoted in *Goebert*,

510 F.3d at 1330).

A government official asserting qualified immunity is also entitled to heightened

pleading.[13]  *Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 838 (11th Cir. 2004).  The

purpose of the heightened pleading requirement is to "weed out nonmeritorious claims."  *Id.*

"Under the heightened pleading requirement, the relevant facts must be alleged 'with some

specificity.'"  *Danley v. Allen*, 540 F.3d 1298, 1314 (11th Cir. 2008) (quoting *Gonzalez v.

Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003)); *see also Swann*, 388 F.3d at 838 ("Some

factual detail in the pleadings is necessary to the adjudication of § 1983 claims.").  Claims

that are "'vague and conclusory'" will not survive motions to dismiss.  *Danley*, 540 F.3d at

1314 (quoting *Gonzalez*, 325 F.3d at 1235).

Gamble argues that there are inadequate factual allegations for asserting he knew that

Buckley was not trained in compliance with Regulation 320.  (Gamble Br. in Supp. 7.)

Buckley does allege that Gamble knew Buckley had not been trained in compliance with

Regulation 320.  (Am. Compl. ¶ 9.)  The amended complaint also presents allegations that

Gamble knew Buckley *felt* he was unqualified to use the chainsaw.  (*See* Am. Compl. ¶ 9.)

Gamble allegedly directed Buckley to proceed with using a powerful and dangerous tool,

knowing that the inmate did not feel qualified to use it, and knowing, based on Buckley's

---

[13] Buckley has not challenged, and so it is assumed, that Gamble is a government official who can assert qualified immunity.

statement at the time, if not by the obvious circumstances of the situation, that the tree was precariously perched over the ditch.  (See Am. Compl. ¶ 9.)  The claim thus could be based on Gamble's knowledge that Buckley had not been trained according to regulations or on Gamble's knowledge that Buckley felt untrained to use the equipment in the face of an obviously dangerous situation that Buckley pointed out.  For this reason, Buckley has alleged enough detail to progress his claim past the pleading stage.  Gamble is on notice that the claim against him is for ordering Buckley to trim the tree knowing that Buckley was not trained in compliance with Regulation 320 and that Buckley felt unqualified to use the chainsaw and that the tree was in a precarious position.[14]

In addition, Gamble is not eligible for qualified immunity.[15]  The first question under a qualified immunity analysis is whether there was a constitutional violation.  Other circuits have addressed deliberate indifference in the specific context of prisoners facing risks during supervised work.  On several occasions, the Eighth Circuit has applied its rule that the Eighth Amendment specifically "forbids knowingly compelling an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful," *Sanchez v. Taggart*, 144 F.3d 1154, 1156 (8th Cir. 1998) (refusing summary judgment because the official who ordered an inmate to perform sandbagging work after the inmate

---

[14] The court has explained already why Buckley's allegation of "willful negligence" for his state-law claim does not disqualify him for his federal claim.  *See supra* pp. 9-10.

[15] It is Buckley's burden to show that Gamble is not entitled to qualified immunity because Buckley does not dispute that Gamble was acting within the scope of his discretionary authority (Resp. to Gamble 6).  *See supra* p. 13.

said a medical condition restricted his ability to sandbag, failed to inquire further about the inmate's medical condition, which could have been confirmed by examining a file, *id.* at 1155-56).[16] *See also*, *e.g.*, *Ambrose v. Young*, 474 F.3d 1070, 1075 (8th Cir. 2007); *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993); *Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir. 1977) (per curiam) ("'[F]or prison officials knowingly to compel convicts to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful constitutes an infliction of cruel and unusual punishment.'" (quoting *Talley v. Stephens*, 247 F. Supp. 683, 687 (E.D. Ark. 1965) (alteration in original))). Gamble tries to distinguish this case from one Eighth Circuit case in particular, *Ambrose v. Young*, where qualified immunity was defeated because the officer had ordered an inmate who was on storm clean-up work duty to stomp out a fire close to a dangling, live power line, 474 F.3d at 1074, 1078-79.  (Gamble Reply 9-10.)  Gamble argues that "unlike a downed power line, a fallen tree does not inherently pose an obvious risk of harm."  (Gamble Br. in

---

[16] *See Cameron v. Siddiq*, No. 2:07-cv-684, 2007 WL 4210422, at *3-4 (M.D. Ala. Nov. 28, 2007) (Watkins, J.) for an Alabama district court case citing Eighth Circuit law on this point, but finding on summary judgment that there was no evidence that the warden knew or should have known that the job assignment subjected the prisoner to a serious risk of harm or injury nor evidence from which the warden could infer a substantial risk of harm.

Supp. 10.)  Buckley's allegation was that the tree was straddling the ditch in a precarious position.  The harm from that circumstance was substantial and obvious.[17]

Other circuits have recognized Eighth Amendment claims for inmates injured while working.  In *Howard v. King*, 707 F.2d 215 (5th Cir. 1983) (per curiam), the Fifth Circuit found a cognizable Eighth Amendment case for an allegation that inmates were overworked as either a general condition of confinement or a penalty for violating prison rules.[18]  *Id.* at 219-21.  In *Gill*, the Second Circuit found a work-related claim cognizable under the Eighth Amendment.  There, the inmate claimed that a supervisor ordered him to continue working

---

[17] *See Bibbs v. Armontrout*, 943 F.2d 26, 27 (8th Cir. 1991) (noting that "the intentional placing of prisoners in dangerous surroundings" violates the Eighth Amendment, but finding no dangerous condition for allegation that prison officials ignored conditions of machines in license plate plant because no evidence showed the officials knew that guards were not covering the inker's gears or were willfully overlooking the equipment's condition); *Fruit v. Norris*, 905 F.2d 1147, 1150-51 (8th Cir. 1990) (in case where inmates were ordered to clean out a wet-well portion of the prison's raw sewage lift-pump station without protective clothing, "'common sense' suggests that [the officials] should have had knowledge that unprotected contact with human waste could cause disease"); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (declining to find cognizable Eighth Amendment claim for one official because the official had no prior notice of a defective ladder used for painting but found a claim against the official that the inmate did tell him that the ladder was unsafe); *cf. Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989) (noting that "prison officials cannot be held to a higher standard of care than the surrounding community" so Eighth Amendment does not apply when work condition practice does not differ from that of the surrounding agricultural community).

Gamble also argues that because he supervised the work crew near the tree, it could not have been a substantial risk as he would not have exposed himself to such danger.  (Gamble Reply 8 n.8.) Buckley never alleged that Gamble was also standing in or near the ditch as the tree was being cut. Gamble's argument assumes a fact not alleged.

[18] In addressing what was at the time, a "novel issue," the Fifth Circuit cited *Ray v. Mabry* and a Fifth Circuit case that is binding on the Eleventh Circuit, noting however that the latter was comparable but distinguishable.  *Howard*, 707 F.2d at 219.  In that Fifth Circuit case, the court recognized a claim for punitive work assignments that resulted in solitary confinement affecting the inmate's tubercular condition.  *Woolsey v. Beto*, 450 F.2d 321, 321 (5th Cir. 1971) (per curiam).  The issue in this case involves injuries caused by work assignments themselves and does not involve the aggravation of a medical condition.  *Woolsey* otherwise, however, supports this analysis.

18

after the inmate had told the supervisor that the ladder used for painting was unsafe. *Id.* at 195. The court held that those allegations amounted to deliberate indifference. *Id. See also Bagola v. Kindt*, 131 F.3d 632, 646 (7th Cir. 1997) (noting that the *Farmer* standard applies to work-related claims); *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam) (noting that the Eighth Amendment applies to inmates compelled to perform physical labor which endangers their life and health, as well as is beyond their strength or causes undue pain (citing *Howard v. King* and *Ray v. Mabry*)).

Thus, for determining a constitutional violation, the *Farmer* analysis applies. Under *Farmer*, it is enough that the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm"; there is no requirement that he believe that the harm would actually come to pass. *Farmer*, 511 U.S. at 842. Indeed, an official who "merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist," does not escape liability. *Id.* at 843 n.8. Also, whether the risk comes from single or multiple sources does not affect that analysis. *Id.* at 843.

Taking the allegations as true that Buckley told Gamble of his insecurity in cutting the tree and the tree's dangerous position, which could be also inferred from the obvious nature of the circumstances, it is sufficiently alleged that Gamble knew Buckley felt he was undertrained on the chainsaw, if not that he was untrained in violation of Regulation 320, and knew that trimming the tree constituted a danger. Based on that knowledge, Gamble was

aware of circumstances that could give rise to an inference of a substantial risk, and because of the obvious nature of the risk, it could be inferred that Gamble drew that inference.[19]  *See supra* pp. 10-11 (discussing *Farmer*).  Gamble thus fails the first prong of the qualified immunity test.

The violation was also "clearly established," placing Gamble on fair notice of an unconstitutional violation.  *Farmer* clearly establishes that awareness of a substantial risk of harm (and drawing that inference) is enough to constitute deliberate indifference for a prison official "denying an inmate humane conditions of confinement."  *Farmer*, 511 U.S. at 837; *see also Hope*, 536 U.S. at 737 ("In making this determination of [Eighth Amendment violations] in the context of prison conditions, we must ascertain whether the officials involved acted with 'deliberate indifference' to the inmates' health or safety.").  In *Hope v. Pelzer*, the Supreme Court applied an Eighth Amendment deliberate indifference analysis to an official who had allegedly handcuffed an inmate on work duty to a hitching post.  *See* 536 U.S. at 733-34, 741.  From these cases, a general constitutional rule emerges – treating inmates with deliberate indifference constitutes an Eighth Amendment violation, whether or not an inmate is physically within the prison.  Thus, the rule applies with obvious clarity to the conduct alleged in this case.  *See supra* pp. 14-15 (discussing the second category of sources of law for determining "clearly established" violations).

---

[19] The parties have not challenged the objective component of the Eighth Amendment claim at this stage.

20

That the facts in this case are novel does not preclude a finding that Gamble had sufficient notice. "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741. The Court has "expressly rejected a requirement that previous cases be 'fundamentally similar'" to the case at hand to put parties on notice, and has found "unnecessar[ily] and wanton[ly] inflicted pain" in factually different situations that were, nevertheless, clearly within the ambit of the constitutional rule. *Id.* (internal quotation marks omitted) (finding violation was so obvious that it could be argued that it clearly violates the Constitution, was in clear violation because of Eleventh Circuit precedent, an Alabama Department of Corrections regulation, and a DOJ report). Similarly here, this constitutional rule against deliberate indifference covers the alleged facts even if they are factually distinguishable. A supervisor directing inmates to cut down a precariously positioned tree with chainsaws and knowing that at least one of them felt uncomfortable with the equipment – if not, that the inmate was untrained in violation of regulations – is a cognizable Eighth Amendment claim. Buckley is not entitled to qualified immunity at this stage.

## II.   Buckley's State-Law Claims

In response to Buckley's state-law claims, the County asserts sovereign immunity under § 14 of the Alabama Constitution on the ground that it was acting as an agent of the State of Alabama when it exercised control over Buckley on the work site. (County Br. in Supp. 15.) Alabama's constitution grants sovereign immunity to the state and "to arms or

21

agencies of the state," but sovereign immunity generally does not extend to counties or municipalities, unless they act as agents of the state. *Ex parte Tuscaloosa County*, 796 So. 2d 1100, 1103 (Ala. 2000).

The County's first argument for sovereign immunity relies on disputed facts, and thus is improper at the motion to dismiss stage. The County insists that an agency relationship arose from its contractual relationship with the Alabama Department of Corrections, but relies on an allegation – that the inmates were loaned by contract – Buckley explicitly removed from his complaint when he amended it. (County Br. in Supp. 16 & n.10.) The County argues that because it was clearly acting pursuant to authority vested in it under Alabama Code § 14-5-10 to contract for leasing or hiring convicts, an agency relationship was established.[20] (County Br. in Supp. 17.) Since there are no allegations to confirm the basis for that agency relationship, however, sovereign immunity cannot rest upon that ground.

Additionally, contrary to the County's arguments (County Br. in Supp. 19), *Town of Loxley v. Coleman*, 720 So. 2d 907 (Ala. 1998) does not foreclose Buckley's claim. In *Town of Loxley*, a defendant town employee was transporting an inmate as part of a work program when the inmate was injured. *Id.* at 908. The court concluded that "the [t]own and [the town's employee] were acting as agents of the State, by reason of their service in transporting [the inmate] and other inmates as part of the work-release program." *Id.* The court reasoned

---

[20] Buckley naturally disputes the County's agency argument because there are no supporting allegations in the amended complaint. (Resp. to County Br. 8.)

that because the Department of Corrections would have been entitled to absolute immunity had it been transporting the inmates, the town transporting the inmates for the state was entitled to that immunity as well.  *Id.*

In discussing *Town of Loxley*, however, another judge in this district refused to recognize sovereign immunity under the Eleventh Amendment to the United States Constitution for a municipal officer complying with a pick-up order from a state court judge and transporting an inmate to a state facility.  *Richards v. Se. Ala. Youth Servs. Diversion Ctr.*, 105 F. Supp. 2d 1268, 1273-74 (M.D. Ala. 2000) (Albritton, J.).  *Richards* refused to extend sovereign immunity to "anytime a municipal officer executed a warrant issued by a state court judge"; the court "[did] not find such an extension of sovereign immunity to be warranted by the Alabama precedent cited by the City [d]efendants." *Id.*  Similarly, Alabama precedent cited by the parties does not justify extending sovereign immunity to every situation in which a county is overseeing inmates on a work project benefitting the county under a lease or contract, or some other arrangement securing the benefit of inmates for the County.   Indeed, § 14-8-40 expressly provides a cause of action to "[a]ny inmate participating in a work release program authorized by [that] chapter or otherwise working outside the jail or a correctional facility" if "the county . . . is willfully negligent in carrying out [its] responsibilities." *Id.*  That cause of action would be a nullity, if in every instance an inmate was injured while working outside the jail or correctional facility, the county could assert sovereign immunity.  The County is therefore not entitled to sovereign immunity.

In addition, Buckley's allegations sufficiently allege a willful negligence action against the County.[21]  In order to prove negligence under Alabama law, "'a plaintiff must establish that the defendant breached a duty owed by the defendant to the plaintiff and that the breach proximately caused injury or damage to the plaintiff.'"  *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1346 (11th Cir. 2007) (quoting *Zanaty Realty, Inc. v. Williams*, 935 So. 2d 1163, 1167 (Ala. 2005)).  To prove willful negligence, the defendant must have breached that duty willfully.  Buckley alleges that the County had a duty to train employees under Regulation 320 and that it intentionally disregarded that duty.[22]  (Am. Compl. ¶ 11.)  A claim that the County owes a duty to train inmates on equipment operations safety and that the County willfully breached that duty is not foreclosed at the motion to dismiss stage.[23]

Buckley's state-law claim against Gamble satisfies Rule 8's pleading requirements and thus survives a Rule 12(b)(6) motion to dismiss.  First, Buckley clearly has a private right of

---

[21] Buckley also claims the County was negligent on a theory of *respondeat superior*, but his response briefs do not address at any length why the County should be held responsible under state law on that theory.  (*See* Resp. to County 4 (making a conclusory comment about *respondeat superior* for negligence).)  The theory is therefore not addressed here.

[22] The parties have not raised arguments addressing whether the allegations are sufficient to support *willful* negligence.  The County does discuss "willful negligence" in its § 1983 arguments.  Relying on Black's Law Dictionary and a federal district case out of Florida, the County equates willful negligence with gross negligence, an aggravated form of negligence that differs "'in quality rather than in degree'" from failure to exercise ordinary care.  (County Br. in Supp. 13. (quoting a Florida district court case).)  The County's argument was intended to explicate the difference between deliberate indifference and willful negligence, however, and not to challenge the sufficiency of Buckley's state-law claims in that regard.  Thus, without further challenge from the parties, Buckley's allegation that the County intentionally neglected to fulfill its duties suffices for alleging *willful* negligence.

[23] The County's proximate cause argument (County Br. in Supp. 23) is also more appropriate at the summary judgment stage.

action against Gamble under § 14-8-40.  As alleged (Am. Compl. ¶ 3), Gamble is an employee of the County, and inmates participating in a work release program *or* working outside the jail or correctional facility may sue a county employee for willful negligence, § 14-8-40.  Second, Buckley has alleged facts to support the basic elements of a willful negligence claim.  As stated previously, in order to prove negligence under Alabama law, "'a plaintiff must establish that the defendant breached a duty owed by the defendant to the plaintiff and that the breach proximately caused injury or damage to the plaintiff'"; the defendant also must have breached that duty willfully.  *See supra* p. 24.  Gamble argues that, except in certain circumstances, work-release employees "stand in the same relationship with their employers as non-inmate employees," *Roberson v. Allied Foundry & Mach. Co.*, 447 So. 2d 720, 722 (Ala. 1984).  (Gamble Br. in Supp. 19-20.)

Nevertheless, Gamble has not convinced the court that he owed no duty of reasonable care to the inmates he supervised.  Beyond that, "'[t]he ultimate test of a duty to use care is found in the foreseeability that harm may result if care is not exercised.'"  *Proctor*, 494 F.3d at 1347 (quoting *Zanaty Realty, Inc.*, 935 So. 2d at 1168).  Foreseeability requires anticipating that "'some general harm or consequence would follow,'" but not the "*specific* event."  *Id.* (quoting *Smith v. AmSouth Bank, Inc.*, 892 So. 2d 905, 910 (Ala. 2004)). Buckley has alleged facts supporting a finding that some general harm or consequence would follow Gamble's ordering Barrett and Buckley to cut the tree in those circumstances and that

Gamble was willfully negligent in disregarding those facts.[24]   The state-law claims will survive.

## V.  CONCLUSION

For the forgoing reasons, it is ORDERED that:

(1)    The County's Motion to Dismiss (Doc. # 35) is GRANTED as to Buckley's requests for punitive damages against the County under 42 U.S.C. § 1983, but DENIED as to all other matters.

(2)    Gamble's Motion to Dismiss (Doc. # 37) is DENIED.

DONE this 15th day of December, 2008.

        /s/   W.  Keith Watkins
UNITED STATES DISTRICT JUDGE

---

[24] It has already been found that Buckley has alleged enough for Gamble's deliberate indifference.  *See supra* pp. 19-20. Under Gamble's own argument that deliberate indifference requires more than willful negligence (Gamble Br. in Supp. 14 & n.8), Buckley has alleged enough for willfulness.  *See also supra* note 22 (explaining that the parties did not elaborate on the definition of *willful* negligence nor rely on it for contesting the state-law claims).